**Donald E. WILLIAMS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–1004–CR–224.

Court of Appeals of Indiana.

Dec. 7, 2010.

Jay Rodia, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Donald Williams appeals the revocation of his placement in home detention. Williams raises one issue, which we revise and restate as whether the trial court abused its discretion by admitting a urinalysis report and a home detention monitoring report into evidence. We affirm.

The relevant facts follow. On March 23, 2009, Williams pled guilty to operating a vehicle while intoxicated as a class A misdemeanor and admitted to being an habitual substance offender. Williams was given an aggregate sentence of four years in home detention with the Hoch Correctional Consultants & Services Home Detention Program ("HOCCS") and 205 days suspended to probation. On February 2, 2010, Erich Hoch, president of HOCCS, filed a notice of violation of home detention stemming from a urinalysis drug screen on February 1, 2010, in which Williams tested positive for marijuana. On February 10, 2010, Hoch filed an addendum to the notice of violation.[1]

On March 19, 2010, the trial court held a hearing on Williams's notices of violation, including the positive drug screen, that Williams "tampered with the home detention field monitoring telephone device by failing to maintain a service—a monitoring device connected to a telephone service," and that he "was not present at a field visit by the Marion County Sheriff's warrant division on Friday, February 5th, 2010, at 11:50 A.M." [2] Transcript at 10, 13. At the hearing, Williams, by counsel, initially admitted to the violation that he was not present during the field visit on February

---

1. The notices of violation are not contained in the record on appeal.

2. Initially, the State also alleged a fourth notice of violation that Williams "failed to re-main [sic] the home detention equipment plugged into the telephone service as of Sunday, February 7th. And at that time he was considered an absconder...." Transcript at 14. However, the State withdrew that allegation.

5, 2010, and explained that "he was working, and he was under the impression that he was able to go to work." *Id.* at 5. Also, Todd Williams, who was an employee at HOCCS and was not related to defendant Williams, testified. During Todd's testimony, the State introduced two documents into evidence over Williams's objection. Todd testified that the first document was the "form that [HOCCS uses] when [it] give[s] [its] clients urine tests," and was specifically the record of Williams's February 1, 2010 urinalysis drug screen "provided . . . at 8:30 in the morning," demonstrating that he tested positive for marijuana (the "Urinalysis Report"). *Id.* at 9. Todd testified that the second document was a "Compressed Daily Summary" HOCCS received from BI Inc., the monitoring company used by HOCCS, which demonstrated that, on "several" occasions in February 2010, including February 5, 2010, the "monitoring device was disconnected from the telephone line" (the "Daily Summary"). Exhibit 2; Transcript at 12.

Regarding the Urinalysis Report, Williams objected and stated that "there's no reliability of the test at issue. I don't know who performed the test, I don't know who filled out that document, and I don't believe this witness is the proper witness to enter that document in." Transcript at 9. The State responded that "[t]he rules of evidence are laxed [sic] and the hearsay can come in . . . . [Todd has] explained where the document came from, how it originated . . . ." *Id.* at 9–10. The court asked Todd who performed the test, and he responded that "Eric Hoch, himself," did so. *Id.* at 10. Todd also noted that Hoch's signature appears on Exhibit 1 as the person who collected and tested the specimen. The court overruled the objection.

Todd also testified regarding Exhibit 2 and stated that the report showed:

[Williams] was in mis-calling, which means that . . . our monitoring device was disconnected from the telephone line. And later in the day it would be plugged back in and then we have a hello, which means that our monitoring device is being monitored by the B.I. monitoring company, the connection has been reestablished.

*Id.* at 12. Williams objected to Exhibit 2 because it "is a third-party document . . . and there's not been a proper foundation laid. . . ." *Id.* at 13. The State responded that "relevancy has been laid out and a foundation has been made," and the court overruled Williams's objection. *Id.*

After hearing the evidence presented, the court sentenced Williams to serve the remainder of the executed portion of his sentence, or 749 days, in the Marion County Jail. *Id.* at 21. The court noted that it did not "have any documentation regarding [Williams] going to work and he did test positive for marijuana consumption." *Id.* The court did not alter the suspended portion of Williams's sentence of 205 days to probation following the executed portion of the sentence.

The issue is whether the trial court abused its discretion by admitting the Urinalysis Report and the Daily Summary into evidence. Regarding the Urinalysis Report, Williams argues that "there is inadequate evidence to support a foundation of trustworthiness" because "[n]o evidence demonstrates the test method used, margin for error or qualifications of the person performing the test." Appellant's Brief at 7. Williams argues that "there was no information about [Eric Hoch's] technical qualifications or of [the] urinalysis process utilized." *Id.* at 8. Regarding the Daily Summary, Williams argues that "the foundation of trustworthiness was not estab-

lished" because Todd "indicated that anyone could disconnect the monitoring device and he did not know if [Williams] had disconnected" it. *Id.*

■ Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State,* 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied.* We reverse only where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Joyner v. State,* 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State,* 717 N.E.2d 957, 966 (Ind.Ct.App.1999), *reh'g denied, trans. denied.*

■ For purposes of appellate review, we treat a hearing on a petition to revoke a placement of in home detention the same as we do a hearing on a petition to revoke probation. *Brooks v. State,* 692 N.E.2d 951, 953 (Ind.Ct.App.1998), *reh'g denied, trans. denied; see also Cox v. State,* 706 N.E.2d 547, 549 (Ind.1999), *reh'g denied.* Our standard of review of an appeal from the revocation of in-home detention placement mirrors that for revocation of probation. *Id.*

■ The Due Process Clause applies to probation revocation hearings. *Reyes v. State,* 868 N.E.2d 438, 440 (Ind.2007) (citing *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)), *reh'g denied.* "But there is no right to probation: the trial court has discretion whether to grant it, under what conditions, and whether to revoke it if conditions are violated." *Id.* "It should not surprise, then, that probationers do not receive the same constitutional rights that defendants receive at trial." *Id.*

■ The due process right applicable in probation revocation hearings allows for procedures that are more flexible than in a criminal prosecution. *Id.* Such flexibility allows courts to enforce lawful orders, address an offender's personal circumstances, and protect public safety, sometimes within limited time periods. *Id.* Within this framework, and to promote the aforementioned goals of a probation revocation hearing, courts may admit evidence during probation revocation hearings that would not be permitted in a full-blown criminal trial. *Id.*; *see also* Ind. Evidence Rule 101(c)(2) ("The rules [of evidence] ... do not apply ... [to] [p]roceedings relating to ... probation...."). "This does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing." *Id.*

In *Reyes,* the Indiana Supreme Court acknowledged that there are multiple tests employed by courts to decide whether specific hearsay evidence may be admitted without violating a probationer's right to confront a witness against him or her. *Id.* at 441. The Court adopted the substantial trustworthiness test for determining the hearsay evidence that should be admitted at a probation revocation hearing. *Id.* This test requires that the trial court evaluate the reliability of the hearsay evidence. *Id.* The Court stated that "ideally [the trial court should explain] on the record why the hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing ... live witnesses." *Id.* at 442 (citation omitted). The Court adopted the substantial trustworthiness test to promote "flexibility" and avoid "the potentially onerous consequences of mandating a balancing inquiry for every piece of hearsay evidence in every probation revocation hearing" and that there was "no reason to require that the State expend its resources to demonstrate that its interest in not producing the de-

clarant outweighs the probationer's interest in confronting the same ... [or] to produce a witness ... to give routine testimony ... when a reliable piece of hearsay evidence is available as a substitute." *Id.* at 441–442.

Here, we initially note that Williams admitted to one of the charged violations, that he was not present during the field visit, and that "[p]roof of any one violation is sufficient to revoke a defendant's probation." *Figures v. State,* 920 N.E.2d 267, 273 (Ind.Ct.App.2010) (quoting *Brooks,* 692 N.E.2d at 953). Williams appears to argue that the trial court did not rely on this violation in revoking his probation, noting that "[i]n this matter, it appears that the trial court relied on the information in the two State's Exhibits" when it "found that [he] tested positive for marijuana consumption at the time the order of revocation was announced." Appellant's Brief at 9. However, we note that the court also cited that it did not "have any documentation regarding [Williams] going to work ..." in revoking his probation. Transcript at 21. At the hearing, Williams, through counsel, explained in admitting the violation that "he was working, and he was under the impression that he was able to go to work." *Id.* at 5. Thus, we cannot say that the court did not rely upon this violation in revoking Williams's probation.

■ We also find that the trial court had sufficient information to deem the State's exhibits substantially trustworthy. For the Urinalysis Report, the court asked Todd who performed the test, and Todd answered that it was Eric Hoch, the president of HOCCS. Williams points out that in *Reyes,* the Court relied upon the lab scientific director's "resume and references to his involvement in the analysis ... [which] supported the finding of the affidavits['] trustworthiness." Appellant's Brief at 8. However, in *Reyes* the issue

concerned affidavits giving scientific opinion "that *George Reyes* would have had to use: cocaine some time in the 72 hours prior to collection," to which Reyes objected "as hearsay and violative of Reyes's due process right to confrontation." *Reyes,* 868 N.E.2d at 439. This scientific opinion was determinative in that case because Reyes had already failed a drug test and the court had already revoked his probation, but the court gave him an opportunity to serve only half of his previously-suspended sentence "[i]f no new drug appeared when the second urine sample was tested, and if the level of marijuana did not come back higher than in the first test...." *Id.*

In this case, the State did not admit any opinion evidence and merely admitted a routine report demonstrating that Williams had tested positive for marijuana. The Urinalysis Report was performed by Eric Hoch, who was the president of HOCCS, the company handling Williams's home detention. The Urinalysis Report contained a signed chain of custody which was signed by Williams and Hoch. Todd Williams, an employee of HOCCS, testified at the hearing and explained the Urinalysis Report to the court, including the fact that the specimen was provided on February 1, 2010, at 8:30 a.m.

The Daily Summary, documenting Williams's compliance with his electronic monitoring, was also substantially trustworthy evidence. As Todd Williams testified, the summary was prepared by BI Inc., which is the monitoring company HOCCS works with to handle home detention monitoring devices for its home detention clients. Todd explained to the court that the summary "explains ... the different transactions that our clients go through during a typical day," that this summary was specific to Williams, and that the summary details "several" in-

stances in which Williams's device "was not connected to the telephone line" as required. Transcript at 11–12. Todd explained that the report indicated that Williams "was in mis-calling" and that "later in the day it would be plugged back in and then we have a hello...." *Id.* at 12. Finally, on February 5, 2010, an instance the Daily Summary lists when Williams's electronic monitoring device was disconnected, a sheriff performed a field visit to Williams's home and Williams was not present.

Although the trial court did not make an explicit determination of substantial trustworthiness on the record, we observe that the failure to do so is not fatal where the record supports such a determination. *See Reyes,* 868 N.E.2d at 442 (affirming trial court's admission of affidavits in probation revocation despite the court's failure to provide detailed explanation on record because evidence supported substantial trustworthiness of affidavits). We therefore conclude that the trial court did not abuse its discretion when it admitted the State's exhibits. *Holmes v. State,* 923 N.E.2d 479, 484 (Ind.Ct.App.2010) (holding that the trial court did not abuse its discretion in revoking defendant's probation

when it admitted a urinalysis report); *c.f. J.J.C. v. State,* 792 N.E.2d 85, 89 (Ind.Ct. App.2003) (noting that the State did not prove a violation of probation where "[n]o explanation was ever given" regarding entries on the juvenile defendant's electronic monitoring printout "as to what could cause this message to occur or why it results in a violation of probation"). Moreover, even if the court did abuse its discretion in admitting one or both of the exhibits, any error was harmless because Williams admitted to one of the three alleged violations and proof of any one violation is sufficient to revoke his probation. *See Figures,* 920 N.E.2d at 273.

For the foregoing reasons, we affirm the revocation of Williams's probation.

Affirmed.

BRADFORD, J., concurs.

DARDEN, J., concurs in result.