ATTORNEY FOR APPELLANT
Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ann L. Goodwin
Deputy Attorney General
Indianapolis, Indiana

## In the
## Indiana Supreme Court

**FILED**
Jul 26 2012, 3:54 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 49S02-1109-CR-529

ROBERT SMITH,

*Appellant (Defendant below)*,

v.

STATE OF INDIANA,

*Appellee (Plaintiff below)*.

Appeal from the Marion Superior Court, No. 49G06-0905-FC-46709
The Honorable Jeffrey L. Marchal, Judge Pro Tempore

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1010-CR-1075

**July 26, 2012**

**Sullivan, Justice.**

Robert Smith was placed on home detention under the supervision of a community-corrections program in January, 2010. He argues that the introduction of certain hearsay evidence at the hearing revoking his community-corrections placement violated his due process right to confrontation. Because we conclude that the hearsay evidence introduced at the hearing was substantially trustworthy, we affirm the judgment of the trial court.

**Background**

On January 28, 2010, Robert Smith pled guilty to operating a motor vehicle after having his license forfeited for life under Indiana Code section 9-30-10-17. On the same day, the trial court sentenced him to 730 days to be served on home detention through Marion County Community Corrections.

On May 17, 2010, Smith's Community Supervision Manager filed a Notice of Community Corrections Violation alleging eight counts – counts one through five alleged that Smith had tested positive for cocaine and marijuana on five separate dates; counts six and seven alleged that Smith had failed to submit urine screens on two separate dates; and count eight alleged that Smith had failed to comply with his monetary obligation. The trial court held a bifurcated hearing on the alleged violations on June 10 and June 24, 2010. During these hearings, the State offered into evidence State's Exhibit 1,[1] which consisted of five lab reports showing that Smith had tested positive for cocaine and marijuana on five separate occasions and an affidavit from Megan R. Jones, who was the supervisor at the lab that performed Smith's drug tests, attesting to the positive results of those tests. Smith objected to the admission of State's Exhibit 1 on the grounds that it denied him his due process right to confrontation and that it was not reliable because it spoke only to the general lab procedures and not to the specific test results in this case.

The trial court overruled Smith's objection and admitted State's Exhibit 1. It specifically found that the information contained in State's Exhibit 1 was reliable:

> The affidavit of Ms. Jones establishes her expertise in the area of drug analyses. The laboratory performs thousands of urine drug screens on probationers under the supervision of Marion Superior Court. The procedures and protocols used by Global Drug Testing Labs were set forth in the exhibit. Ms. Jones personally reviewed the records kept in regard to the Defendant's tested urine samples. Ms. Jones attested that all procedural steps were followed in the testing of these samples and the results of said tests were highly reliable.

---

[1] In its order, the trial court referred to this exhibit as State's Exhibit A, but we understand the court to mean State's Exhibit 1.

Appellant's App. 51. Thus, in an order dated June 24, 2010, the trial court found that Smith had violated the terms of his community-corrections placement by testing positive for cocaine and marijuana.[2] As a result, it revoked Smith's community-corrections placement and ordered him to serve two years' imprisonment in the Indiana Department of Correction. The court credited Smith 98 days for the 49 days that he had spent incarcerated (with 49 days' good time credit) and 117 days for the days he had served on home detention (with no good time credit).

Smith appealed, claiming (1) that his due process right to confrontation was violated by the admission of State's Exhibit 1; and (2) that the trial court committed fundamental error by not giving him good time credit for the time he spent on home detention pursuant to amended Indiana Code section 35-38-2.6-6 (which took effect on July 1, 2010). In response, the State filed a Motion to Dismiss Smith's appeal as untimely, which the Court of Appeals granted.

Smith sought, and we granted, transfer, Smith v. State, 962 N.E.2d 641 (Ind. 2011) (table), thereby vacating the dismissal order of the Court of Appeals and reinstating Smith's appeal. Ind. Appellate Rule 58(A). Both parties have submitted briefs on the merits in this case, which we consider below.[3]

## Discussion

## I

As an initial matter, we briefly address the "State's Second Motion to Dismiss" filed on February 1, 2012, which is pending before the Court. In that motion, the State argues that we should dismiss this appeal because it is moot. For his part, Smith concedes that he has served his sentence and so his argument related to the application of amended Indiana Code section 35-38-

[2] The trial court found that the other allegations of Smith violating the terms of his community-corrections placement had not been proved by a preponderance of the evidence.
[3] On September 12, 2011, Smith filed "Appellant's Verified Motion to Dismiss State's Cross-Appeal," which is still pending before the Court. In its cross-appeal, the State argues that we should dismiss this appeal for lack of jurisdiction for reasons related to Smith's utilizing Trial Rule 60(A) in this proceeding. After having granted transfer and having reinstated Smith's appeal following its dismissal by the Court of Appeals, we reject the State's argument that this Court should similarly dismiss it on jurisdictional grounds.

3

2.6-6 in which he claims that he is entitled to home-detention good time credit toward his sentence is in fact moot.  See Lee v. State, 816 N.E.2d 35, 40 n.2 (Ind. 2004) (validity of sentence rendered moot after sentence has been served).  Thus, we decline to address Smith's arguments related to this amendment's retroactive application and equal protection implications.  We do note, however, that in another case handed down today, Cottingham v. State, __ N.E.2d __, No. 06S01-1112-CR-703 (Ind. 2012), we hold that amended Indiana Code section 35-38-2.6-6 applies to those who are placed on home detention on or after its effective date of July 1, 2010, and in this case, Smith was placed on home detention in January, 2010.[4]

## II

Nevertheless, we will consider Smith's argument that his due process right to confrontation was violated by the admission of State's Exhibit 1.  As mentioned above, the trial court's finding that Smith had violated the terms of his community-corrections placement was based on this exhibit.  And a finding that Smith violated the terms of his community-corrections placement may have negative collateral consequences.  See Ind. Code § 35-38-1-7.1(a)(6) (2008) (violation of community-corrections placement may be a statutory aggravating factor in the event Smith is sentenced for committing another crime); see also Hamed v. State, 852 N.E.2d 619, 621-22 (Ind. Ct. App. 2006) (addressing merits of claim because of possible negative collateral consequences).

## A

We have recognized that persons facing revocation of their community-corrections placements are entitled to certain due process rights at their revocation hearings, including a right to confrontation.  See Cox v. State, 706 N.E.2d 547, 549-50 & n.6 (Ind. 1999) (the due process requirements applicable in probation-revocation hearings also apply in community-corrections-

---

[4] Moreover, we note that the decision by the panel of the Court of Appeals in Brown v. State, which we discuss at length in Cottingham, rejected the same equal protection argument presented in this case – namely, that not applying amended Indiana Code section 35-38-2.6-6 retroactively violates the Equal Protection Clause of the Fourteenth Amendment.  947 N.E.2d 486, 492-93 (Ind. Ct. App. 2011), trans. denied.  We also note that Smith's counsel in this case was also the defendant's appellate counsel in Brown.

4

revocation hearings); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (the Due Process Clause applies to probation-revocation hearings).  This is so even though the Sixth Amendment and the U.S. Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), on the Sixth Amendment right to confrontation do not apply to such proceedings.  See Reyes v. State, 868 N.E.2d 438, 440 n.1 (Ind. 2007) (Crawford is not implicated in revocation hearings because they are not criminal trials); see also United States v. Kelley, 446 F.3d 688, 691 (7th Cir. 2006) ("Because revocation proceedings are not criminal prosecutions, Sixth Amendment rights are not implicated." (citation omitted)).

In this case, Smith concedes that he does not have a Sixth Amendment/Crawford right to confrontation in his revocation hearing.  Nevertheless, he argues that we should find that his due process right to confrontation requires confrontation as defined in Crawford, and that the trial court denied Smith his due process right to confrontation by admitting State's Exhibit 1.

We reject the argument that Smith's due process right to confrontation should be the same right to confrontation as defined in Crawford for purposes of the Sixth Amendment; moreover, we reject any argument that Crawford changed the due process analysis we employ in revocation proceedings.  Cf. State v. Rose, 171 P.3d 253, 258 (Idaho 2007) (rejecting argument that Crawford applies with equal force to a probationer's due process right to confrontation); State v. Marquis, 257 P.3d 775, 778-79 (Kan. 2011) (rejecting argument that Crawford changed due process analysis applicable to probation-revocation proceedings).

In Reyes, we adopted the "substantial trustworthiness" test for determining when hearsay evidence should be admitted at probation-revocation hearings.  868 N.E.2d at 441 (following Kelley, 446 F.3d at 692).  In adopting this test, we considered the U.S. Supreme Court's decisions holding that the Due Process Clause applies to parole and probation revocation hearings.  See Gagnon, 411 U.S. 778 (probation-revocation hearings); Morrissey v. Brewer, 408 U.S. 471 (1972) (parole-revocation hearings).  We wrote:

> Morrissey outlined the minimum requirements to satisfy due process in a parole revocation hearing.  Though the Supreme Court listed the confrontation right as one of those minimum requirements – holding in a parenthetical that a hearing of-

> ficer may only deny the right with good cause – the Court also issued a caveat: "We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey, 408 U.S. at 489. In Gagnon, in which the Supreme Court applied the requirements of Morrissey to probation revocation hearings, the Court clarified the confrontation right of probationers: "While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." Gagnon 411 U.S. at 782-83 n.5.

Reyes, 868 N.E.2d at 440 (emphasis added). Thus, we held in Reyes that a defendant's due process right to confrontation is satisfied upon a finding that the hearsay evidence is substantially trustworthy because that is the equivalent of Morrissey's good-cause showing. Id. at 442.

Notwithstanding Reyes, Smith argues that, because Crawford disapproved of dispensing with the right of confrontation based upon reliability, we should not base our admission of hearsay evidence in revocation hearings on the reliability or substantial trustworthiness of such evidence. See Crawford, 541 U.S. at 61 ("[W]e do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'"). Crawford, which was decided more than three years before our decision in Reyes, held that the Sixth Amendment generally prohibits denying criminal defendants the right to confront out-of-court declarants whose statements are testimonial in nature regardless of the reliability of such statements. See Crawford, 541 U.S. at 68 ("Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."); accord Rose, 171 P.3d at 257. But, again, we note that the holding of Crawford was based on the Sixth Amendment; it "changed nothing with respect to revocation hearings." Kelley, 446 F.3d at 691. Thus, as we implicitly recognized in Reyes, because the holdings in Morrissey and Gagnon were based on due process concerns, they were not affected by the holding in Crawford. See also id. at 691 ("Morrissey's articulation of a limited confrontation right in revocation proceedings was explicitly grounded in considerations of due process, not the Sixth Amendment. . . . [N]othing in [Crawford] can be read to suggest that Morrissey and Gagnon have been implicitly altered . . . ."); Rose, 171 P.3d at 258-59

("Crawford does not change the due process standard for confrontation in a probation revocation hearing" (citing Reyes and Kelley, among others)); Marquis, 257 P.3d at 778-79 (test for determining good cause grounded in minimum due process requirements set forth in Morrissey and Gagnon, and Crawford did not change that analysis). And as Morrissey held, due process does not require that persons like Smith be granted an absolute right of confrontation in revocation hearings, but rather a limited right that may be denied for good cause. 408 U.S. at 488-89; see also Cox, 706 N.E.2d at 549 ("[P]robationers are not entitled to the full array of constitutional rights afforded defendants at trial." (citations omitted)); accord Rose, 171 P.3d at 258. Accordingly, in Reyes, we adopted the substantial-trustworthiness test for the admission of hearsay evidence in revocation proceedings to meet Morrissey's due process concerns.

Further, we note that there are strong policy reasons for not equating the due process right to confrontation applicable in revocation hearings with the Crawford right to confrontation applicable in criminal trials. As we wrote in Cox, the flexible approach outlined in Morrissey serves public policy in a variety of ways:

> This [flexible approach] is necessary to permit the court to exercise its inherent power to enforce obedience to its lawful orders.
>
> There are also sound policy justifications for such flexibility. Alternative sentences such as probation and community corrections serve the humane purposes of avoiding incarceration and of permitting the offender to meet the offender's financial obligations. But for sentencing alternatives to be viable options for Indiana judges, judges must have the ability to move with alacrity to protect public safety when adjudicated offenders violate the conditions of their sentences. Put differently, obstacles to revoking an alternative sentence may diminish the likelihood of community corrections placements being made in the first place.

Cox, 706 N.E.2d at 550 (internal citation omitted). We therefore reject Smith's argument that his due process right to confrontation in revocation hearings requires confrontation as defined in Crawford.

7

**B**

Our inquiry does not end there, however. We must now address whether Smith's due process right to confrontation was in fact violated by the admission of State's Exhibit 1. In doing so, we consider whether the evidence supports the trial court's finding that State's Exhibit 1 was substantially trustworthy (or in the trial court's terms, reliable). See, e.g., Reyes, 868 N.E.2d at 442 (considering whether the evidence adequately supports the finding that hearsay affidavits were substantially trustworthy). We conclude that it does.

As mentioned above, State's Exhibit 1 consists of five lab reports showing that Smith had tested positive for cocaine and marijuana on five separate occasions and an affidavit from Megan R. Jones, who was the supervisor at the lab that performed Smith's drug tests. In her affidavit, Jones attested to a number of things:

- She is the Lab Supervisor of Global Drug Testing Labs ("Lab"), and in that capacity, she is familiar with the procedures utilized by the employees to ensure the integrity of the chain of custody of the specimens submitted to the Lab and in the testing of the specimens.
- The procedures employed by the Lab, including the urine specimen's submission; the storage and transportation of the specimen; the chain of custody and labeling; and the testing and retesting of specimens.
- She reviewed the records kept in the Lab with regard to the urine specimens submitted by Robert Smith on February 2, 2010; March 3, 2010; April 9, 2010; April 19, 2010; and April 26, 2010, and all the procedural steps were followed in analyzing this specimen according to the documentation kept in the normal course of business of the Lab.
- The various analyses of the specimen provided by Smith tested positive for cocaine and THC (marijuana).

State's Ex. 1, at 3-5. The affidavit was made under oath, was signed by Jones, and was notarized.

After reviewing the record, we conclude that the evidence adequately supports the trial courts findings that State's Exhibit 1 is substantially trustworthy. Cf. Reyes, 868 N.E.2d at 442 (affidavits found to be substantially reliable when the affiant was director of lab, was familiar with procedures employed to ensure chain of custody and validity of testing, and had reviewed

8

records with regard to drug test at issue).  Thus, Smith's due process right to confrontation was not violated by the admission of this exhibit.

## Conclusion

We affirm the judgment of the trial court.

Dickson, C.J., and Rucker, David, and Massa, JJ., concur.