**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHELLE BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA ELLIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A04-1203-CR-116 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Dennis D. Carroll, Judge
Cause No. 48D01-0902-FB-29

**August 15, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Joshua Ellis appeals the revocation of his probation and the reinstatement of five years of his previously-suspended sentence. Ellis raises one issue, which we revise and restate as:

I.    Whether the evidence is sufficient to support the revocation of Ellis's probation; and

II.   Whether the trial court abused its discretion in ordering that Ellis serve five years of his previously-suspended sentence.

We affirm.

The facts most favorable to the revocation follow. In September 2009, the trial court accepted Ellis's plea of guilty to burglary as a class B felony and theft as a class D felony and sentenced him to ten years in the Department of Correction with six years suspended to probation for the class B felony and two years for the class D felony, to run concurrently with each other for an aggregate sentence of ten years with six years suspended to probation. The probation order included the conditions that Ellis obey all state laws and "not knowingly associate with any person who has been convicted of a felony, except for just cause." Appellant's Appendix at 67. According to "Probation Revocation Discovery" Ellis started probation on October 6, 2011.

On November 25, 2011, Elwood Police Sergeant Zach Taylor observed a pickup truck that had been reported as stolen, followed the vehicle in his marked patrol vehicle, and activated his emergency lights to initiate a stop. Dustin Moreland was driving the truck, and Ellis was in the passenger seat. The truck then ran a red light and proceeded to flee traveling at least eighty miles per hour until the truck eventually went off of the road and crashed into a ditch. The occupants proceeded to exit the truck and run. Sergeant

2

Taylor ordered the two men to stop several times; the occupants failed to stop, and Sergeant Taylor deployed his Police K-9. The K-9 apprehended Ellis by the arm, and Ellis struck and attempted to drag the dog into the woods. Ellis was able to remove his jacket, and the K-9 stayed with the jacket. Elwood Police Captain Jamie Crawford assisted Sergeant Taylor in searching the area. The police received an anonymous call reporting a male subject walking on a State road in the area, and Captain Crawford responded and detained Ellis. Sergeant Taylor then identified Ellis as the passenger in the truck who had fled from him and the K-9. Sergeant Taylor later discovered that Moreland had three felony convictions for auto theft.

On December 6, 2011, the State filed a notice of violation of probation alleging that Ellis had violated the conditions of his probation, in that Ellis violated the laws of Indiana by committing the new criminal offenses of auto theft as a class D felony, striking a law enforcement animal as a class A misdemeanor, and resisting law enforcement as a class A misdemeanor; that Ellis failed to pay certain probation fees; and that Ellis failed to avoid contact with individuals that have felony convictions in that on November 25, 2011, he was in the company of Moreland, who had felony convictions under three cause numbers.

On January 17, 2012, the court held a probation revocation hearing, at which the court heard testimony from Sergeant Taylor, Captain Crawford, Ellis's probation officer, Ellis, and Ellis's mother. When asked what happened after the men did not stop, Sergeant Taylor testified: "I sent my Police K-9 after the suspects. They were probably fifty (50), sixty (60) yards away. My Police K-9 apprehended [Ellis], had him by the left

3

arm I believe. . . . As my dog had him he was striking my dog, trying to drag him into the woods." Transcript at 12. When asked "And you say [Ellis] started punching your K-9," Sergeant Taylor responded "Yes." Id. at 13.

Ellis testified that he had called Moreland for a ride to his brother's house in Anderson where he planned to stay until his probation meeting about five days later. Ellis testified that he did not know at the time that the pickup truck which Moreland was driving was a stolen vehicle and that Moreland's father had a truck of the exact same make and model. Ellis testified that, when the vehicle was traveling at eighty miles per hour, he asked Moreland to let him out but Moreland did not slow down and said that the truck was stolen. Ellis testified that he did not hear Sergeant Taylor order him to stop and that he realized that the K-9 had been deployed and became scared and ran. Ellis testified that he never punched the K-9 but that he was trying to take his jacket off and yanked on the jacket trying to get his arm out of the dog's mouth. Ellis further testified that he had known Moreland since approximately October 2011 when he was released from prison and that he had met Moreland through his father, who knew Moreland's father. Ellis testified that he had Moreland's number saved in his cell phone. When asked whether he understood that he was not to associate with convicted felons, Ellis responded affirmatively, and when asked what steps he had taken to ensure that Moreland was not a convicted felon, Ellis stated "I talked to him, I asked him what's up. I don't really know how to describe it. I mean, we talk and stuff, talk on the computer and stuff. I know his dad." Id. at 37. Ellis then indicated that he had told Captain Crawford that Moreland had

4

stolen two other vehicles, a red Beretta and a white Blazer, and that he had informed Captain Crawford where to locate each of those vehicles.

The court found that Ellis "within six weeks after being released from prison made really bad choices," that "[t]he first was to hang out with [] Moreland," that "it's simply not credible to believe that [] Ellis had no idea that [] Moreland had any serious criminal problems," that "[h]e acknowledged as much in his final testimony that he had confided in the Police that [] Moreland was a[n] auto theft thief," and that "that doesn't prove absolutely that he knew he had a history but it's certainly more likely than not and so based upon a preponderance [] Ellis was with a known felon . . . ." Id. at 45. The court further found that Ellis "was engaged in resisting law enforcement, the flight and the resisting . . . as well as the striking of a law enforcement animal." Id. at 45-46. The court revoked Ellis's probation and ordered that he serve five years of his previously-suspended sentence.

## I.

The first issue is whether the evidence is sufficient to support the revocation of Ellis's probation. A probation revocation hearing is civil in nature, and the State needs to prove the alleged violations by a preponderance of the evidence. Cox v. State, 706 N.E.2d 547, 551 (Ind. 1999), reh'g denied. We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. Id. If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. Id. The violation of a single

condition of probation is sufficient to revoke probation. <u>Wilson v. State</u>, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999).

Ellis argues that the court erred when it determined that he had committed the new crime of striking a law enforcement animal as the only evidence that he struck the K-9 was the testimony of Sergeant Taylor who believed that Ellis was striking the dog and that, when Sergeant Taylor released the K-9, Ellis was fifty or sixty yards away. Ellis asserts that he involuntarily reacted in an attempt to stop the dog from biting him and to get away, and that his reaction was a primal response and involuntary. Ellis further argues that the court erred when it determined that he was in the company of a person, Moreland, who had been convicted of a felony, that even if Ellis knew that Moreland had had serious criminal problems that did not mean that Ellis had knowledge that Moreland had prior felony convictions. Ellis argues that simply stealing cars would not result in a felony conviction and that being arrested and convicted by a court would be required before such actions would turn Moreland into a convicted felon. Ellis argued that Moreland had just turned twenty-three years of age and it is not unreasonable to believe that he had not yet been convicted of a felony. Ellis also argues that, because of the uncertainty as to the impact of the determination that two of the three violations are erroneous, this case should be remanded to the trial court for resentencing based on the valid violation of resisting law enforcement.

The State argues that the evidence was sufficient to show by a preponderance of the evidence that Ellis resisted law enforcement, struck a law enforcement animal, and associated with a convicted felon. The State argues that Sergeant Taylor testified that he

6

observed Ellis striking his dog and trying to drag him into the woods, that it is undisputed that Ellis ran from Sergeant Taylor after he exited the stolen pickup, and that, although Ellis claims that he had no way of knowing that Moreland had prior felony convictions, Ellis was well aware that Moreland engaged in criminal activity and directed police to the locations of multiple cars that Moreland had stolen.

Ellis does not challenge the trial court's finding that he violated a condition of his probation in committing the new offense of resisting law enforcement. With respect to the allegation that Ellis committed the new criminal offense of striking a law enforcement animal,[1] according to Sergeant Taylor's testimony he ordered Ellis to stop several times, Ellis failed to stop, and Sergeant Taylor then released his Police K-9. Sergeant Taylor testified that Ellis was "probably fifty (50), sixty (60) yards away," that his Police K-9 apprehended Ellis "by the left arm I believe," and that "[a]s my dog had him he was striking my dog, trying to drag him into the woods." Transcript at 12. When asked "And you say [Ellis] started punching your K-9," Sergeant Taylor responded "Yes." Id. at 13. Based upon the record, we conclude that the court did not abuse its discretion in finding by a preponderance of the evidence that Ellis committed this new offense.

---

[1] Ind. Code § 35-46-3-11 provides in part:

(a)     A person who knowingly or intentionally:

   (1)     strikes, torments, injures, or otherwise mistreats a law enforcement animal; or

   (2)     interferes with the actions of a law enforcement animal while the animal is engaged in assisting a law enforcement officer in the performance of the officer's duties;

commits a Class A misdemeanor.

7

Even assuming that the evidence was not sufficient for the court to find that Ellis knowingly associated with a person who had been convicted of a felony, the trial court did not abuse its discretion in finding by a preponderance of the evidence that Ellis violated the condition of his probation that he not commit new criminal offenses, and in revoking Ellis's probation. See Williams v. State, 937 N.E.2d 930, 935 (Ind. Ct. App. 2010) (holding that even if the court did abuse its discretion in finding certain violations, any error was harmless because the defendant admitted to one of the three alleged violations and proof of any one violation was sufficient to revoke his probation).

## II.

The next issue is whether the court abused its discretion in ordering that Ellis serve five years of his previously-suspended sentence in the Department of Correction. Ellis specifically argues that the trial court abused its discretion when it used two unsupported probation violations to sentence him to five of the six years of his previously-suspended sentence. At the time of Ellis's violations and the probation revocation hearing, Ind. Code § 35-38-2-3(g) set forth the trial court's sentencing options upon a finding of a probation violation, providing:

> If the court finds that the person has violated a condition at any time before termination of the period, the court may impose one (1) or more of the following sanctions:
>
> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>
> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Ind. Code § 35-38-2-3(g) (subsequently amended by Pub. L. 147-2012 (eff. Jul. 1, 2012) (amending Ind. Code § 35-38-2-3 and setting forth the contents of subsection (g) under subsection (h)). This provision permits judges to sentence offenders using any one of or any combination of the enumerated options. Prewitt v. State, 878 N.E.2d 184, 187 (Ind. 2007).

The Indiana Supreme Court has held that a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. Id. at 188. The Court explained that "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed" and that "[i]f this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." Id. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. Id. (citation omitted). As long as the proper procedures have been followed in conducting a probation revocation hearing, "the trial court may order execution of a suspended sentence upon a finding of a violation by a preponderance of the evidence." Goonen v. State, 705 N.E.2d 209, 212 (Ind. Ct. App. 1999).

Within six weeks after being released from prison, Ellis committed the new criminal offenses of resisting law enforcement in fleeing from Sergeant Taylor and striking a law enforcement animal. We also observe that Ellis was aware that Moreland had stolen two vehicles and informed Captain Crawford of the location of each of those

9

vehicles. Given the circumstances as set forth above and in the record, we cannot say that the court abused its discretion in ordering Ellis to serve five years of the previously-suspended portion of his sentence. See Jones v. State, 838 N.E.2d 1146, 1149 (Ind. Ct. App. 2005) (holding that the trial court did not abuse its discretion in ordering the defendant to serve a portion of his previously-suspended sentence as a result of probation violations).

For the foregoing reasons, we affirm the trial court's revocation of Ellis's probation and reinstatement of five years of his previously-suspended sentence.

Affirmed.

FRIEDLANDER, J., and DARDEN, Sr. J., concur.