**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHRISTOPHER A. CAGE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WESLEY HOOD, SR., ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 48A02-1201-CR-30 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48D03-1012-FC-739

**September 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Wesley Hood, Sr., appeals the revocation of his placement in home detention. Hood raises one issue, which we revise and restate as whether the trial court abused its discretion in admitting into evidence an affidavit regarding the results of certain laboratory testing. We affirm.

The relevant facts follow. On August 1, 2011, Hood pled guilty to carrying a handgun without a license as a class C felony and resisting law enforcement as a class A misdemeanor, and the court imposed an aggregate sentence of eight years with four years executed to be served in home detention, and the balance suspended to probation. On October 27, 2011, the State filed a motion to terminate Hood's home detention, and following a hearing on November 14, 2011, at which Hood admitted to a violation of the requirement to "hook up on" an "ankle bracelet machine" as ordered, the court found that Hood had violated the terms of his home detention but ordered him returned to home detention. Transcript at 34.

On November 21, 2011, the State filed a Petition for Termination of Home Detention/Suspended Sentence in which it alleged that on or about November 4, 2011, Hood "provided a urine specimen which proved to be positive for Benzoylecgonine (cocaine metabolite), and Cannobinoids (marijuana), in violation of the Home Detention Program Rules and Procedures . . . ." Appellant's Appendix at 27. The court held an initial hearing on December 7, 2011, at which Hood was advised of the allegations and his constitutional rights, Hood entered a plea of not guilty, and the court granted Hood's request for the appointment of a public defender.

On December 12, 2011, the court held a hearing on the alleged violation, at which the State presented the affidavit of Jeff Retz, the Scientific Director and a Certifying Scientist at Witham Memorial Hospital Toxicology Laboratory, which stated that laboratory "analysis indicated the presence of the following drug class(es) in Wesley Hood's system: Cannabinoids (THC/Create ratio=23), Cocaine Metabolite." State's Exhibit 1 at 3. The affidavit further stated: "It is my opinion that Wesley Hood would have used: marijuana some time in the 60 days prior to collection / cocaine some time in the 72 hours prior to collection." Id.

The State also presented the testimony of Hood's home detention probation officer, who testified that on November 4, 2011, the probation department administered a urine screen and obtained a urine sample from Hood. The initial "stick test" indicated that Hood's urine tested positive for cocaine and cannabinoids, and the urine sample was sent pursuant to procedure to the Witham testing facility. Transcript at 44. During cross-examination, defense counsel questioned the probation officer regarding the laboratory test results as stated in Retz's affidavit. When asked about the test results for marijuana, the probation officer testified that "[i]t had to be enough to show positive," and the [c]reatinine level is twenty-three (23) which is relatively high." Id. at 47. When asked "[b]ut you're not able to tell the level of cocaine at all," the officer answered "No, sir." Id. When asked how long marijuana stays in a person's system, the probation officer testified "we usually say thirty (30) days," and when asked "[a]nd if you go back to thirty (30) days before your test, that would be before he was placed on the program," the officer answered "Yes sir." Id. at 49. When asked "[n]ow the cocaine, you have testified

3

that you're unable to determine the level of cocaine from that document, the test really didn't determine a level of cocaine," "[i]t could be a very small trace amount or it could be a larger amount," and "how long does cocaine stay in your system," the officer testified "[t]hat can vary . . . we usually say about three (3) to seven (7) days." Id. at 49-50. The court found that Hood violated the terms of his home detention placement and ordered Hood to serve his sentence in the Indiana Department of Correction.

The issue is whether the trial court abused its discretion in admitting Retz's affidavit regarding the results of the laboratory testing. Hood argues that the court's admission of the affidavit of Retz resulted in the denial of adequate due process. Hood acknowledges that the affidavit established that appropriate protocols were followed to establish a valid chain of custody, the test results showing positive results for the use of cocaine and marijuana, and the opinion that drug use had occurred within seventy-two hours of the urine sample. However, Hood contends that the admission of the affidavit violated his right to confront and cross-examine the witnesses against him. Hood further asserts that, unlike in Reyes v. State, 868 N.E.2d 438, 440 (Ind. 2007), reh'g denied, the contents of the affidavit concerning the time of use were not routine and that the facts of his case dictate a different result. Hood specifically asserts that the dispute in this case is not whether Hood used cocaine but rather "whether he used cocaine after being sentenced and placed on the home detention program." Appellant's Brief at 8. Hood argues that he should have been permitted the opportunity to cross-examine Retz and explore the possibility of various factors which could cause a positive test result greater than the period stated in his affidavit. The State maintains that the court correctly admitted Retz's

4

affidavit. The State argues that the affidavit was substantially trustworthy under Reyes and established that Hood's cocaine consumption had to have occurred within seventy-two hours before the urine sample collection.

The decision to revoke probation is within the sole discretion of the trial court. Woods v. State, 892 N.E.2d 637, 639 (Ind. 2008) (citing Reyes, 868 N.E.2d at 440). And its decision is reviewed on appeal for abuse of that discretion. Id. (citing Prewitt v. State, 878 N.E.2d 184, 188 (Ind. 2007)). On review, we consider only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of the witnesses. Id. (citing Braxton v. State, 651 N.E.2d 268, 270 (Ind. 1995), reh'g denied). If there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation. Id. at 639-640. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied.

For purposes of appellate review, we treat a hearing on a petition to revoke a placement of in home detention the same as we do a hearing on a petition to revoke probation. Williams v. State, 937 N.E.2d 930, 933 (Ind. Ct. App. 2010) (citations omitted). The Due Process Clause applies to probation revocation hearings. Id. (citing Reyes, 868 N.E.2d at 440 (citing Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S. Ct. 1756 (1973)), reh'g denied). "But there is no right to probation: the trial court has discretion whether to grant it, under what conditions, and whether to revoke it if conditions are

5

violated." Id. "It should not surprise, then, that probationers do not receive the same constitutional rights that defendants receive at trial." Id.

The due process right applicable in probation revocation hearings allows for procedures that are more flexible than in a criminal prosecution. Id. Such flexibility allows courts to enforce lawful orders, address an offender's personal circumstances, and protect public safety, sometimes within limited time periods. Id. Within this framework, and to promote the aforementioned goals of a probation revocation hearing, courts may admit evidence during probation revocation hearings that would not be permitted in a full-blown criminal trial. Id.; see also Ind. Evidence Rule 101(c)(2) ("The rules [of evidence] . . . do not apply . . . [to] [p]roceedings relating to . . . probation . . . ."). "This does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing." Williams, 937 N.E.2d at 933 (citing Reyes, 868 N.E.2d at 440).

In Reyes, the Indiana Supreme Court acknowledged that there are multiple tests employed by courts to decide whether specific hearsay evidence may be admitted without violating a probationer's right to confront a witness against him or her. Reyes, 868 N.E.2d at 441. The Court adopted the substantial trustworthiness test for determining the hearsay evidence that should be admitted at a probation revocation hearing. Id. This test requires that the trial court evaluate the reliability of the hearsay evidence. Id. The Court stated that "ideally [the trial court should explain] on the record why the hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing . . . live witnesses." Id. at 442 (citation omitted). The Court adopted the substantial trustworthiness test and stated that there was "no reason to require that the

6

State expend its resources to demonstrate that its interest in not producing the declarant outweighs the probationer's interest in confronting the same every time it seeks to admit reliable hearsay evidence in a routine probation revocation hearing or . . . expend its resources to produce a witness . . . to give routine testimony in that routine probation revocation hearing, when a reliable piece of hearsay evidence is available as a substitute." Id. at 441-442.

In Reyes, the State filed a notice of probation violation alleging that the defendant violated his probation by testing positive for cocaine. Id. at 439. During a hearing on the matter, the State sought to submit into evidence the affidavit of the scientific director of the laboratory that conducted the test on urine samples provided by the defendant, the results of the urinalysis tests on the samples provided by the defendant, and other related documents. Id. The scientific director did not testify at the hearing. Id. The defendant's counsel objected to the admission of the affidavits as hearsay and claimed that the admission of the affidavit without live testimony from the affiant would violate the defendant's right to confrontation. Id. The trial court admitted the affidavits and revoked the defendant's probation. Id.

The scientific director of the laboratory that conducted the urinalysis test in Reyes affirmed under the penalties of perjury that he was familiar with the procedures employed to ensure the chain of custody of samples, the testing of those samples, and the validity of the test procedures employed by the lab. Id. at 442. Based on the results of the tests on the defendant's urine sample, the scientific director concluded that the defendant had used cocaine within seventy-two hours of providing the sample. Id. The Indiana

7

Supreme Court concluded that the evidence adequately supported a finding that the scientific director's affidavit was trustworthy. Id.

In this case, in his affidavit presented at the December 12, 2011 hearing, Retz stated under the penalties of perjury that he was familiar with the procedures employed to ensure the chain of custody of samples, the testing of those samples, and the validity of the test procedures employed by the lab. Retz further stated he reviewed laboratory records in regard to the urine sample taken from Hood on November 4, 2011, that "[t]here is little or no chance that a positive report would result from indirect or casual contact by secondary smoke or airborne byproducts from the drug," that "[a]ll of the steps outlined above were taken in regards to this sample," and that "[t]he analysis indicated the presence of the following drug class(es) in Wesley Hood's system: Cannabinoids (THC/Create ratio=23), Cocaine Metabolite." State's Exhibit 1 at 3. Moreover, Retz stated: "It is my opinion that Wesley Hood would have used: marijuana some time in the 60 days prior to collection / cocaine some time in the 72 hours prior to collection." Id.

Based upon the evidence at the revocation proceeding, we cannot say that Retz's affidavit and the results of the drug analysis described in the affidavit did not satisfy the trustworthiness test outlined in Reyes. Accordingly, we conclude that the trial court did not abuse its discretion in admitting Retz's affidavit and that Hood was not denied due process. See Smith v. State, 971 N.E.2d 86, 92 (Ind. 2012) (concluding that the evidence adequately supported the trial court's findings that the affidavit presented by the State related to lab test results of a urine specimen was substantially trustworthy); Holmes v.

8

State, 923 N.E.2d 479, 484 (Ind. Ct. App. 2010) (concluding that the court did not abuse its discretion in admitting the urinalysis report during the hearing concerning the revocation of Holmes's home detention in light of Reyes).

To the extent that Hood suggests that the evidence is insufficient due to the evidence regarding the timeframe during which he used marijuana, we observe that the evidence of Retz's affidavit indicates that Hood tested positive for cocaine and that Hood used cocaine during the seventy-two hour period prior to giving the urine sample. Hood does not challenge or point to other evidence which is in conflict with the evidence regarding his cocaine use and the timeframe of the use. In any event, we will not reweigh that evidence or judge the credibility of the witnesses. See Woods, 892 N.E.2d at 639 (noting that "we consider only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of the witnesses" and that "[i]f there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation"). Substantial evidence of probative value supported the court's decision that Hood violated the terms of his placement in home detention.

For the foregoing reasons, we affirm the revocation of Hood's placement in home detention.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.

9