## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 19 2017, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Darion Cook,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 19, 2017

Court of Appeals Case No.
49A05-1609-CR-2153

Appeal from the Marion Superior Court.
The Honorable Anne Flannelly, Magistrate.
Cause No. 49G04-1410-F4-46872

**Barteau, Senior Judge**

## Statement of the Case

[1] Darion Cook appeals the revocation of his probation and placement in community corrections.  We affirm.

# Issue

Cook raises one issue, which we restate as: whether the trial court abused its discretion in admitting hearsay evidence.

# Facts and Procedural History

On October 8, 2014, the State charged Cook with burglary, a Level 4 felony, and theft of a firearm, a Level 6 felony. The parties executed a plea agreement. Cook agreed to plead guilty to burglary, and the State agreed to dismiss the theft charge. In addition, the parties agreed that if the trial court accepted the plea agreement, Cook would be sentenced to six years, of which four years would be executed and two years would be suspended. The parties further agreed Cook would serve the executed portion of the sentence under the supervision of Marion County Community Corrections (MCCC).

On December 23, 2014, the court accepted the plea agreement and ordered Cook to serve the executed portion of his sentence through MCCC. The court further directed Cook to comply with MCCC's rules. In addition, the court ordered Cook to avoid "illegal drugs or any controlled substance (without a valid prescription)" and stated that he would be required to "submit to drug screening as directed at [Cook's] own expense." Appellant's App. p. 75.

MCCC initially placed Cook on home detention. From March 23, 2015 through March 10, 2016, the State filed four separate notices of violation, alleging Cook had violated various MCCC rules. Cook admitted to violating at least one rule as to each of the four notices of violation. The court imposed

sanctions short of revoking Cook's probation, including a stint in the county jail and modification of his placement from home detention to work release.

[6] On June 21, 2016, the State filed a fifth notice of violation, alleging Cook had tested positive for a controlled substance and had failed to comply with financial obligations. The State later filed a motion to revoke Cook's probation. On July 25, 2016, Cook sent a letter to the trial court, conceding he had a "dirty drop," meaning he had tested positive for a controlled substance. *Id.* at 114. He asked for leniency, explaining "This is my first dirty drop since last year July. This [is] only my second one the whole time I been [sic] on this case." *Id.*

[7] The trial court held an evidentiary hearing on the State's petition. The State presented Exhibit 1, which consisted of a written disciplinary conduct report and a urinalysis dip testing stick that was sealed in an evidence bag, both of which indicated Cook had tested positive for synthetic marijuana. The evidence was admitted over Cook's objection that the exhibit was based on hearsay. The court also took judicial notice of Cook's letter. The court determined Cook had violated the MCCC's rules and ordered him to serve his entire suspended sentence in the Indiana Department of Correction.

# Discussion and Decision

[8] Cook argues the trial court should not have admitted hearsay evidence. The State responds that the trial court properly considered hearsay evidence in determining Cook had violated MCCC's rules.

[9] We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Williams v. State*, 937 N.E.2d 930, 933 (Ind. Ct. App. 2010). An abuse of discretion occurs if a decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

[10] A defendant is not entitled to serve a sentence on probation or in a community corrections program. *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). Although the Due Process Clause applies to probation revocation proceedings, probationers do not receive the same constitutional protections that criminal defendants receive at trial. *Reyes v. State*, 868 N.E.2d 438, 440 (Ind. 2007). Instead, the due process right applicable in probation revocation hearings allows for procedures that are more flexible than in a criminal prosecution. *Id.* Within this flexible framework, courts may admit evidence during probation revocation hearings that would not be permitted in a criminal trial. *Id.*

[11] The Indiana Rules of Evidence, which govern hearsay, do not apply in proceedings involving sentencing or probation. Ind. Evid. R. 101(d)(2). Instead, the Indiana Supreme Court has determined that when a court receives hearsay evidence during a probation revocation hearing, it must assess the evidence's reliability and may admit it as evidence only if it is "substantially trustworthy." *Smith v. State*, 971 N.E.2d 86, 90 (Ind. 2012).

[12] In the current case, the State presented testimony from Sergeant Austin Helton, a shift supervisor with the Duvall Residential Center (the Center). Cook served his work release sentence at the Center and submitted to drug tests there,

including the failed test that led the State to request revocation of Cook's probation and community corrections placement. Helton was trained in the Center's drug testing policies and procedures, including the storage of evidence. He testified that the Center's staff can conduct two different types of urinalysis tests: a "five-panel" test for a variety of controlled substances and one that tests only for synthetic marijuana. Tr. Vol. II. p. 8.

[13] Helton identified and discussed State's Exhibit 1, which consisted of a written disciplinary conduct report dated June 18, 2016, and a urinalysis dip testing stick in an evidence bag. The Center employee who managed Cook's drug test and prepared the report, RCO George, no longer worked there. George had been trained in the Center's drug testing policies and procedures. Helton was not present for the drug test, but he had looked at the dip stick afterward and had confirmed that Cook's sample tested positive for synthetic marijuana. In addition, Helton had reviewed and approved George's report, which stated, in relevant part:

> On 06/18/2016 at approximately 1615 hrs. I, Rco [sic] George, gave Resident Cook, Darion gallery (#741480) a standard urinalysis dip test. The result of the dip test showed that Resident Cook tested positive for K2/Spice (a synthetic form of marijuana) and THC. I then placed the dip test inside of an evidence bag labeled with the Resident's name and gallery number. I then placed the evidence bag inside of the gray evidence safe located inside of Station 1.

Appellant's Supplemental Ex. Vol. p. 4.

[14] Helton retrieved the bag from the safe before the revocation hearing. The bag had Cook's name and gallery number written on it. Helton noted that at the time of the hearing, the testing stick still showed a positive result for the presence of synthetic marijuana.

[15] The trial court determined that the report and testing device were reliable because Helton demonstrated he was knowledgeable about the Center's policies and procedures for conducting drug tests and storing evidence. Tr. Vol. II, p. 12. We agree that Exhibit 1 had substantial guarantees of trustworthiness. Helton proved he understood the Center's policies. In addition, the report identifies Cook as the individual who submitted to the test. Also, Helton found the evidence bag in the safe where George had placed it, still bearing Cook's name and gallery number as indicated on the report. Although Helton had not been present for Cook's test, he reviewed George's report and examined the testing stick after the fact. Based on this evidence, the trial court did not abuse its discretion in admitting the evidence. *See Bass v. State*, 974 N.E.2d 482, 487-88 (no abuse of discretion in admitting toxicology report during probation revocation hearing; case manager described drug testing procedures in detail, providing substantial guarantees of trustworthiness).

[16] Even if the trial court abused its discretion by admitting Exhibit 1, any error was harmless. We will not reverse if the admission of evidence constituted harmless error. *Williams*, 937 N.E.2d at 933. Here, the trial court admitted into evidence Cook's letter, in which he admitted to the court that he had failed the

drug test. Cook's admission, in combination with Helton's testimony, is sufficient to support the trial court's decision.

## Conclusion

[17] For the reasons stated above, we affirm the judgment of the trial court.

[18] Affirmed.

Bailey, J., and Robb, J., concur.