ATTORNEYS FOR APPELLANT
Susan K. Carpenter
Public Defender of Indiana

J. Michael Sauer
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

_In the_

# Indiana Supreme Court

No. 01S02-0612-CR-495

GEORGE REYES,

*Appellant (Defendant below)*,

v.

STATE OF INDIANA,

*Appellee (Plaintiff below)*.

Appeal from the Adams Circuit Court, No. 01C01-9708-CF-017
The Honorable Frederick A. Schurger, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 01A02-0510-CR-976

**June 21, 2007**

**Sullivan, Justice.**

Courts have adopted two principal methods for determining the admissibility of hearsay evidence in probation revocation hearings: a "balancing test" that weighs the probationer's interest in confronting the declarant against the State's interest in not producing same; and a "substantial trustworthiness test" that determines the reliability of the evidence. For the reasons set forth in this decision, we adopt the substantial trustworthiness test.

**Background**

In 1998, a jury found Defendant George Reyes guilty of aggravated battery. Reyes's original sentence was corrected in 1999, when the trial court sentenced Reyes to ten years in prison, with six years suspended, and to ten years of probation. Reyes left prison in January 2000 and began his probationary period.

One rule of probation is that a probationer may not use any drugs or other prohibited substances unless those substances are prescribed by a physician. On February 8, 2005, during the probationary portion of Reyes's sentence, Reyes's probation officer filed a Violation of Probation Petition outlining various earlier probationary violations by Reyes and stating further that Reyes had submitted a urine sample on January 18, 2005, that later tested positive for marijuana.

In an agreement with the State on August 5, 2005, Reyes admitted that he had violated the terms of his probation when he tested positive for marijuana. The remainder of Reyes's suspended sentence was revoked (2,070 days), but Reyes was given an opportunity to serve only 1,035 days: Reyes would submit a new urine sample on the date of the agreement (August 5, 2005) and another ten days later, on August 15, 2005. If no new drug appeared when the second urine sample was tested, and if the level of marijuana did not come back higher than in the first test, then Reyes would not have to serve his entire suspended sentence.

Reyes submitted the first urine sample on August 5, 2005, and the second on August 16, 2005. Both samples tested positive for cocaine metabolite. On September 8, 2005, the trial court conducted a hearing. During the hearing, the State moved to admit into evidence affidavits of Jeff Retz, the Scientific Director at Witham Memorial Hospital Toxicology Laboratory, along with the urinalysis test results and other related documents. Retz's affidavits stated, in part, "It is my opinion that <u>George Reyes</u> would have had to use: cocaine some time in the 72 hours prior to collection." (Appellant's App. at 155, 162) (emphasis in originals). Reyes's counsel objected to the admission of the affidavits as hearsay and violative of Reyes's due process right to confrontation. The trial court admitted the affidavits and revoked Reyes's probation.

On appeal, the Court of Appeals rejected Reyes's argument that the admission of the affidavits violated Reyes's due process right to confront a witness against him. Reyes v. State, 853 N.E.2d 1278 (Ind. Ct. App. 2006). Reyes petitioned for, and we granted, transfer. Reyes v. State, 860 N.E.2d 599 (Ind. 2006) (table). The State did not oppose transfer; instead, it asked this Court to clarify the standard by which a trial court should judge the admission of evidence challenged by a probationer on confrontation grounds. We now do so.

**Discussion**

The United States Supreme Court has held that the Due Process Clause applies to probation revocation hearings. Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (citing Morrissey v. Brewer, 408 U.S. 471 (1972)). But there is no right to probation: the trial court has discretion whether to grant it, under what conditions, and whether to revoke it if conditions are violated. Isaac v. State, 605 N.E.2d 144, 146 (Ind. 1992) (citations omitted). It should not surprise, then, that probationers do not receive the same constitutional rights that defendants receive at trial. Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999).

The due process right applicable in probation revocation hearings allows for procedures that are more flexible than in a criminal prosecution. Morrissey, 408 U.S. at 489; Cox, 706 N.E.2d at 550. Such flexibility allows courts to enforce lawful orders, address an offender's personal circumstances, and protect public safety, sometimes within limited time periods. Cox, 706 N.E.2d at 550. Within this framework, and to promote the aforementioned goals of a probation revocation hearing, courts may admit evidence during probation revocation hearings that would not be permitted in a full-blown criminal trial. Id. at 550-51 (citing Ind. Evidence Rule 101(c)).[1]

This does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing. Morrissey outlined the minimum requirements to satisfy due process in a

---

[1] Because probation revocation hearings are not criminal trials, the United States Supreme Court's decision on the Sixth Amendment right to confrontation in criminal trials, Crawford v. Washington, 541 U.S. 36 (2004), is not implicated or discussed here. See, e.g., United States v. Kelley, 446 F.3d 688, 690-92 (7th Cir. 2006); United States v. Rondeau, 430 F.3d 44, 47-48 (1st Cir. 2005); Marsh v. State, 818 N.E.2d 143, 146-47 (Ind. Ct. App. 2004).

parole revocation hearing. Though the Supreme Court listed the confrontation right as one of those minimum requirements—holding in a parenthetical that a hearing officer may only deny the right with good cause—the Court also issued a caveat: "We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey, 408 U.S. at 489. In Gagnon, in which the Supreme Court applied the requirements of Morrissey to probation revocation hearings, the Court clarified the confrontation right of probationers: "While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." Gagnon, 411 U.S. at 782-83 n.5. Thus, in both Morrissey and Gagnon, the Supreme Court specifically listed affidavits as a type of material that would be appropriate in a revocation hearing even if not in a criminal trial.

We have previously acknowledged that there are multiple tests employed by courts to decide whether specific hearsay evidence may be admitted without violating a probationer's right to confront a witness against him or her. Cox, 706 N.E.2d at 550 n.8. In Cox, we held that "judges may consider any relevant evidence bearing some substantial indicia of reliability . . . includ[ing] reliable hearsay," id. at 551, but declined to adopt a particular approach to determining that reliability, id. at 550 n.8.

Courts have adopted two principal approaches to evaluating hearsay evidence in probation revocation hearings. In one, the trial court employs a balancing test that weighs the probationer's interest in confronting a witness against the interests of the State in not producing the witness. E.g., United States v. Martin, 382 F.3d 840, 844-45 (8th Cir. 2004). In the balancing test, the State is required to show good cause for denying confrontation. See United States v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005). In another test, the trial court determines whether the evidence reaches a certain level of reliability, or if it has a substantial guarantee of trustworthiness. E.g., United States v. Kelley, 446 F.3d 688, 692 (7th Cir. 2006). The requirement, found in Morrissey, 408 U.S. at 489, that the trial court find "good cause" before denying the right to

4

confrontation plays an explicit role when a trial court performs a balancing test; however, this does not mean that <u>Morrissey</u>'s good cause requirement is not addressed in the substantial trustworthiness test. As discussed <u>infra</u>, the substantial trustworthiness test implicitly incorporates good cause into its calculus.

The Court of Appeals applied a balancing test to the admission of Retz's affidavits. In its version of the test, the Court of Appeals weighed the reliability of the affidavits against the State's reason for failing to produce Retz at trial. <u>Reyes</u>, 853 N.E.2d at 1283. In other words, the Court of Appeals both required the State to show good cause for not producing Retz at trial and evaluated the affidavits on their own merits.

We find the substantial trustworthiness test the more effective means for determining the hearsay evidence that should be admitted at a probation revocation hearing. The Seventh Circuit has held that once "substantial guarantees of trustworthiness" for hearsay evidence are shown, there is no longer a need to show good cause. Substantial trustworthiness is the equivalent of a good cause finding in this context. <u>Kelley</u>, 446 F.3d at 692 (quoting <u>Egerstaffer v. Israel</u>, 726 F.2d 1231, 1234 (7th Cir. 1984)).

As Judge Barnes wrote in his opinion concurring in the result of <u>Reyes</u>, the need for flexibility combined with the potentially onerous consequences of mandating a balancing inquiry for every piece of hearsay evidence in every probation revocation hearing in Indiana weighs strongly in favor of the substantial trustworthiness test over a balancing test. <u>Reyes</u>, 853 N.E.2d at 1286 (Barnes, J., concurring in result) ("Even if the lab had been next door to the courthouse . . . Retz should not be expected to spend his valuable time attending probation revocation hearings to give live testimony that merely duplicates an already demonstrably reliable hearsay statement."). Like Judge Barnes, we see no reason to require that the State expend its resources to demonstrate that its interest in not producing the declarant outweighs the probationer's interest in confronting the same every time it seeks to admit reliable hearsay evidence in a routine probation revocation hearing or, if the State fails the balancing test, expend its resources to produce a witness (or indeed to require that witness to expend his or her time) to give routine testimony in

that routine probation revocation hearing, when a reliable piece of hearsay evidence is available as a substitute.

The substantial trustworthiness test also provides a clearer standard. A balancing test in which a trial court weighs the probationer's interest in confrontation against the State's good cause for not producing a witness is too unwieldy a method for everyday use in a proceeding as common as a probation revocation hearing. The substantial trustworthiness test requires that the trial court evaluate the reliability of the hearsay evidence. Once that determination is made, we find it superfluous for a court to have to assess the relative weight of every reason the State might not care to produce a witness.

Therefore, rather than require that a court make an explicit finding of good cause every time hearsay evidence is admitted during a probation revocation hearing, we hold that the court may instead evaluate the hearsay's substantial trustworthiness. As the Seventh Circuit explained in Kelley, "ideally [the trial court should explain] on the record why the hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing . . . live witnesses." Kelley, 446 F.3d at 693. If the test of substantial trustworthiness of hearsay evidence is met, a finding of good cause has also implicitly been made.

Under the facts of this case, the trial court had sufficient information to deem Retz's affidavits substantially trustworthy.[2] While the trial court's explanation on the record of its decision to admit the hearsay is not as detailed as we would prefer, referencing only the presence of Retz's curriculum vitae, the Court of Appeals observed in its opinion that Retz's affidavits were reliable:

> Retz, who has a Bachelor of Science degree in Chemistry, has been the Scientific Director of Witham Lab since 1992. Before he was employed at Witham Lab, Retz was a Laboratory Supervisor for the Indiana State Department of Toxicology. In his capacity as the Scientific Director of the lab, Retz is "familiar with the procedures employed to ensure the chain of custody of samples, the testing of those samples and the validity of the test procedures employed by" Witham Lab.

---

[2] In the record, counsel and the trial court used the term "reliable," instead of "substantially trustworthy," when discussing the affidavits. (Tr. at 111.)

6

> Retz reviewed "all of the records in this laboratory in regard to the urine sample received which was labeled as a sample taken from: George Reyes, taken on 8/16/2005[.]" In his sworn affidavit, Retz concluded that Reyes had used cocaine within seventy-two hours of the August 16th collection of Reyes's urine sample. Under these facts and circumstances, we conclude that the hearsay statement in Retz's sworn affidavit concerning Reyes's cocaine use is reliable.

Reyes, 853 N.E.2d at 1283-84 (citations omitted). We agree. This evidence adequately supports a finding that Retz's affidavits are substantially trustworthy. See Kelley, 446 F.3d at 693 (holding record was sufficiently clear for appellate court to conclude hearsay was sufficiently trustworthy); United States v. Pratt, 52 F.3d 671, 675 (7th Cir. 1995) (holding trial court could have found hearsay evidence reliable and government could have shown good cause for not producing witnesses).

## Conclusion

We affirm the holding of the Court of Appeals that Retz's affidavits were properly admitted, but hold that the trial court should have applied a test of "substantial trustworthiness" in so doing. We summarily affirm the Court of Appeals, pursuant to Ind. Appellate Rule 58(A), as to all other issues not addressed in this opinion.

Shepard, C.J., and Dickson and Boehm, JJ., concur. Rucker, J., concurs in result without separate opinion.

7