Jeffrey A. PETERSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A05–0902–CR–101.

Court of Appeals of Indiana.

July 14, 2009.

S. Neal Ziliak, Noblesville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Jeffrey A. Peterson appeals the revocation of his probation. We affirm.

### FACTS AND PROCEDURAL HISTORY

On August 7, 2003, Peterson pled guilty to Class C felony child molesting. He was sentenced to seven years, with three years suspended to probation.[1] The conditions of his probation included:

(YOU SHALL)

\*　　\*　　\*　　\*　　\*　　\*

---

1. We note that a copy of Peterson's pre-sentence investigation report was included in the appendix on white paper. Although the report is properly marked "confidential," it should have been filed on light green paper:

> ... Ind. Appellate Rule 9(J) requires that "[d]ocuments and information excluded from public access pursuant to Ind. Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)." Ind. Adminis-

trative Rule 9(G)(1)(b)(viii) states that "[a]ll pre-sentence reports pursuant to Ind.Code § 35–38–1–13" are "excluded from public access" and "confidential." The inclusion of the presentence investigation report printed on white paper in his appellant's appendix is inconsistent with Trial Rule 5(G)....

*Hamed v. State,* 852 N.E.2d 619, 621 (Ind.Ct. App.2006).

6. Not consume or possess on your person or in your residence any controlled substance (illegal drug) except as listed on the prescription of a licensed physician; you shall submit to alcohol and drug testing when ordered by the Probation Department.

\* \* \* \* \* \*

13. Submit to a ... sex offender ... assessment/evaluation by a treatment facility approved by your Probation Officer. You will satisfactorily comply with the recommendations set forth in the assessment.

(Appellant's App. at 198–99.) Under Condition 20, labeled "Other special conditions," the trial court wrote in "no contact with [victim]," "no contact or residence with any child under the age of 18 yrs.," and "must register as a sex offender." (*Id.* at 199.)

In June 2005, Peterson began treatment with Jodi Redick–Battle at the Center for Mental Health. Peterson signed the Center for Mental Health's "Treatment Contract." (State's Ex. 1.) The treatment contract lists thirteen requirements for participating in the sex offender treatment program, which include:

4. I will be required, during the course of treatment, to undergo either voice stress tests or polygraphs at my expense whenever requested by my therapist.

\* \* \* \* \* \*

6. I am not permitted to rent, purchase or use pornography or any other sexually explicit materials while I am in treatment. This includes but is not limited to internet pornography websites, pornographic or sexually explicit movies, books or magazines, telephone sex lines, strip bars or any other sexually oriented products or services.

(*Id.*)

On August 30, 2007, Peterson submitted to a polygraph examination. Mark J. James completed a report that included a transcript of the questions and answers. Based on the report, a notice of probation violation was filed on September 21, 2007. It alleged Peterson violated Condition 6 by using Vicodin; violated Condition 13 by having contact with children, viewing pornography and x-rated movies, and visiting a strip club; and violated Condition 20 by having contact with his grandchildren, attending a school basketball game, lifting a child at work, and having contact with his girlfriend's daughter.

Ultimately, the trial court found the State had carried its burden only as to the allegation that Peterson violated Condition 13 by viewing pornography. The evidence relevant to that violation was elicited at a hearing on October 30, 2008.

Lynn Fishburn, a supervisor in the Probation Department, testified that Peterson was required to sign a treatment contract with the Center for Mental Health and was required to submit to polygraph examinations. During Fishburn's testimony, the State offered into evidence James' report of the polygraph examination, which states in relevant part:

8. Have you viewed or had in your possession any sexually arousing material e.g., but not limited to, videos, adult movies, magazines, personal contact materials, books, internet web sites, games, sexual devices or aids, or any materials related to illegal or deviant behaviors? **Answer: Yes, I've watched HBO erotica movies a couple of hundred times. The last time was a couple of weeks ago. I will watch them for a few minutes, (10 to 15) and sometimes I will masturbate to them.**

**I've also seen x-rated movies about 5 to 6 times; the last time was a couple of weeks ago.**

\* \* \* \* \* \*

10. Have you accessed the internet by using a computer, television, or cell phone? **Answer: Yes, I look at pornography about two to three times a week, and I will masturbate to it.**

(State's Ex. 2) (emphasis in original).

Peterson objected to the admission of Exhibit 2 because

> it involves a polygraph which obviously our courts have found unreliable and not admissible. Secondly, it's evidently the work of a Mark James.... The person who prepared the document is not here to testify and there are things in this document that are not correct.

(Tr. at 76.) The State made further attempts to establish a foundation for Exhibit 2, but Fishburn testified she knows James only "through this document and referral to him in the notes." (*Id.* at 77.) The State then asked the court to admit Exhibit 2 "to show the reason for the questions by the probation officer at that following appointment." (*Id.* at 78.) The trial court agreed to admit Exhibit 2 "[f]or that limited purpose." (*Id.*)

Joy Nunn, Peterson's probation officer, testified she met with Peterson on September 21, 2007 to discuss his answers during the polygraph examination. Peterson told her

> he did not view pornography but it does pop up on Sabrina's [his girlfriend] computer every once in a while. We talked about him having HBO, Cinemax, and Showtime. He said he did not watch those so he would be getting rid of those channels on his cable.

(*Id.* at 88.)

Redick–Battle testified Peterson had "successfully completed all ten assignments," but was placed "into after care based on some of the topics that we've discussed with him ... to kind of reestablish some better boundaries for him." (*Id.*

at 119–20.) Although Peterson successfully completed the written requirements of the program, Redick–Battle did not graduate him due to the pending violations. Using a "risk assessment tool called the Static 99, which is probably the most widely used instrument tool based on sexual recidivism rates," Redick–Battle placed Peterson in the low risk category. (*Id.* at 120.)

Redick–Battle testified she had seen the video of Peterson's polygraph examination and indicated the transcript James prepared matched what she saw in the video. The State asked Redick–Battle, "Does it concern you from a treatment perspective that his recollection does not match yours or that which you observed from the video?" (*Id.* at 126.) She responded, "It's concerning that he hasn't admitted what was viewed on the tape." (*Id.*) Based on Redick–Battle's testimony, the State moved to admit Exhibit 2 for "for substantive purposes." (*Id.* at 125.) Peterson renewed his previous objections, but the trial court overruled his objections and admitted Exhibit 2.

Peterson testified in his own behalf. His attorney questioned him about the allegations of viewing pornography:

Q. ... [Y]ou acknowledge some type of viewing of some form of pornography; is that correct?

A. Correct.

Q. And what does that consist of?

A. That consisted of there would be pop-ups on the computer. There would also, we would watch television shows. Sabrina had HBO at the time and there would be times that nudity would pop up and so you would see it. But immediately I would turn my head or change the channel. And that's what I stated to him [James], that I would see it for a

couple seconds and then turn my head or change the channel.

\*    \*    \*    \*    \*    \*

Q. Now, and there were some movies that you and your girlfriend watched; is that correct?

A. No, we've never watched any-Sabrina does not allow that in her house.

(*Id.* at 103–04.) Later, Peterson's attorney called attention to three questions from the polygraph examination that reflected favorably on Peterson:

Q. ... It said have you touched anyone under 18 for sexual reasons and you told them no. Have you tried getting a child to touch you in a sexual manner and you told them no. Have you exposed yourself to anyone under 18 and you said no. And according to this document this was true, that you were telling the truth; is that right?

A. Yes.

(*Id.* at 105.)

On cross-examination, the State asked:

Q. And in your conversation you indicated that you have watched HBO erotica movies a couple hundred times.

A. No.

\*    \*    \*    \*    \*    \*

Q. That's not what you told him?

A. That's what the document states, that's not what I told him.

Q. So you're alleging that Mr. James made up your answers to 44 of the questions but not the final three?

A. No, what I'm saying is that answer that I give is not the correct answer.

Q. As of August 30, 2007, for the previous year and a half, what would have been the answer?

A. That I had seen pop-ups, that I had watched TV and HBO channels. He asked me if I had seen any nudity on these channels. I told him, yes, that I had seen them and that I would change the channel or turn my head while watching these movies.

Q. ... And so when he asked you Question 10, if you accessed the Internet by using a computer, television, or cell phone, and he indicates that your answer was yes, I look at pornography about two to three times a week and I'll masturbate to it—

A. I stated yes, that I have seen pornography or nudity on pop-ups on the computer, yes.

(*Id.* at 106–07.)

The trial court found Peterson violated Condition 13 of his probation by viewing pornography. The court ordered Peterson to serve the entirety of his previously suspended sentence with the following explanation:

I cannot reconcile what you said here to the Court under oath while you were testifying to what was said here in the polygraph. And what your counsel [2] said, she confirmed that this was correct. I think what concerns me is while you were testifying, I believed you. But this document shows that you are not telling the truth. So I will go ahead and show that your probation is hereby revoked and that you shall be incarcerated at the Department of Corrections for a period of three years.

(*Id.* at 134.)

## DISCUSSION AND DECISION

Peterson argues (1) the trial court abused its discretion by admitting State's

**2.** It appears this word should be "counselor;" the trial court seems to be referring to Re-
dick–Battle, not defense counsel.

Exhibit 2 and the remaining evidence was insufficient to establish he viewed pornography; and (2) the trial court abused its discretion by ordering him to serve his entire suspended sentence.

### 1. *Admission of Evidence*

■ A probation revocation hearing "is not to be equated with an adversarial criminal proceeding." *Cox v. State,* 706 N.E.2d 547, 550 (Ind.1999), *reh'g denied.* Because probation revocation procedures "are to be flexible, strict rules of evidence do not apply." *Id.; see also* Ind. Evidence Rule 101(c). The trial court may consider hearsay "bearing some substantial indicia of reliability." *Id.* at 551. Hearsay is admissible in this context if it "has a substantial guarantee of trustworthiness." *Reyes v. State,* 868 N.E.2d 438, 441 (Ind. 2007), *reh'g denied.* A trial court "possesses broad discretion in ruling on the admissibility of evidence, and we will not disturb its decision absent a showing of an abuse of that discretion." *C.S. v. State,* 735 N.E.2d 273, 275 (Ind.Ct.App.2000), *trans. denied.*

■ In *Reyes,* our Supreme Court held that ideally, a trial court should explain on the record why the hearsay is reliable. 868 N.E.2d at 442. Peterson notes the trial court offered no explanation, but acknowledges the record suggests the court found Exhibit 2 reliable based on Redick–Battle's testimony. We agree, and therefore we will address whether Redick–Battle's testimony demonstrates the evidence is sufficiently reliable.

■ Redick–Battle testified she viewed the video of the polygraph examination and indicated the transcript prepared by James matched what she saw. Peterson

suggests the video might be inaccurate or incomplete; however, we conclude that suggestion, without more, does not undermine the reliability of the exhibit.[3] While it would be relatively easy to produce a false or misleading document that purports to be a transcript of the polygraph examination, it is much more difficult to create a video that appears to show Peterson admitting to viewing pornography and x-rated movies on numerous occasions when in fact he said only that he had seen some pop-ups on the computer. It is even more unlikely that the video could be so cleverly made that it would thoroughly fool someone who had been treating Peterson for over two years. Redick–Battle's comparison of Exhibit 2 to the video was sufficient to establish the reliability of the exhibit for purposes of a probation revocation hearing. *See Marsh v. State,* 818 N.E.2d 143, 145–46 (Ind.Ct.App.2004) (testimony of Child Protective Services case manager that child told someone at school that Marsh hit her in the mouth admissible in his probation revocation hearing because case manager observed injuries to the child's mouth). Furthermore, Peterson's answers to questions 8 and 10, as reflected in Exhibit 2, are sufficient to establish that he violated the conditions of his probation by viewing pornography.

### 2. *Imposition of Suspended Sentence*

■ When a trial court finds a person has violated a condition of probation, the trial court may continue the person on probation, extend the probationary period, or order execution of all or part of the sentence that was originally suspended. Ind.Code § 35–38–2–3(g). We review a sentencing decision in a probation revocation proceeding for abuse of discretion.

---

**3.** Peterson also asserts he was never provided a copy of the video. Peterson made no such contention to the trial court, and he cites

nothing in the record that indicates what evidence the State provided to him.

*Podlusky v. State,* 839 N.E.2d 198, 200 (Ind.Ct.App.2005).

■ Peterson argues the trial court abused its discretion by ordering him to serve all his previously suspended sentence because Redick–Battle testified he was classified as a low risk to reoffend and had successfully completed his written assignments, he had nearly completed his term of probation, and he had committed no new offenses. However, during the polygraph examination, Peterson stated he had watched "HBO erotica movies a couple of hundred times," had seen x-rated movies five or six times, and viewed pornography on the internet two to three times a week. (State's Ex. 2.) Redick–Battle testified it concerned her that Peterson would not admit he made these statements during the polygraph examination. In light of Peterson's frequent viewing of pornography in violation of his treatment contract and the conditions of his probation, the trial court was well within its discretion to order Peterson to serve the remainder of his sentence.

Affirmed.

BAKER, C.J., concurs.

BARNES, J., concurs in result.