## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 05 2016, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian J. Christlieb,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | December 5, 2016<br><br>Court of Appeals Case No.<br>48A04-1604-CR-930<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Thomas Newman, Jr., Judge<br><br>Trial Court Cause No.<br>48C03-1505-F5-684 |

**Brown, Judge.**

[1] Brian J. Christlieb appeals the revocation of his probation. We affirm.

## Facts and Procedural History

[2] On June 29, 2015, Christlieb pled guilty to two counts of failure to register as a sex or violent offender, one as a level 5 felony and one as a level 6 felony. Pursuant to the plea agreement the trial court sentenced him to an aggregate term of six years with two years executed on home detention and four years suspended to probation.

[3] An Amended Notice of Violation of Executed and Suspended Sentence was filed on March 3, 2016, alleging that Christlieb had committed new criminal offenses of false informing and domestic battery as class A misdemeanors.

[4] On March 28, 2016, the court held an evidentiary hearing at which the State presented the testimony of Anderson Police Officers Andrew Brunett, Bryan Stephens, and Brandon Reynolds. Officer Brunett testified that he and Officer Stephens were dispatched to an apartment on February 7, 2016, in reference to a neighbor's complaint of a domestic dispute, that when they arrived they saw the door to the apartment was off its hinges, items had been toppled over, everything was in disarray, and that Christlieb was the only person inside. With respect to the door, Officer Brunett testified that "there was no damage to the frame," that "the hinges were done from the inside," and that he "thought that was kind of particular going in to it." Transcript at 5. He testified that Christlieb informed the officers that, about twenty minutes before their arrival, two black males wearing ski masks forced entry into his house, one of the men

presented a handgun, the men made no demands and took no property, and that the men threw items around his house, ripped his home detention device out of the wall, and then fled on foot. Officer Brunett further testified that he smelled alcohol when he was speaking to Christlieb, who had bloodshot and glassy eyes, and that he could tell that Christlieb was intoxicated. He stated that Christlieb was transported to jail and, while in the intake area at the jail, Christlieb told him "You want to know the real truth? I beat the s--- out of that b----" and "I beat her brains out." *Id.* at 10. Officer Brunett also testified that Christlieb told him that he wanted to kill him.

[5]     Officer Stephens testified that he observed the door to the apartment off of its hinges, that Christlieb came to the door frame to speak to the officers, and that he instantly could smell an odor of alcohol on his breath and noticed his eyes were bloodshot. He stated that the residence was in total disarray, the televisions were knocked over, and "it was a total trashed apartment. Like a struggle had happened." *Id.* at 15. Officer Stephens testified that Christlieb stated that two black men trashed the place, tore his cable modem box out of the wall, and then left. He testified that he went outside the residence to his radio to try to make contact with any number associated with J.C., Christlieb's wife, and while he was in front of the street a pickup truck pulled up and a person who announced she was J.C.'s mother was in the truck. Officer Stephens testified that she stated that she needed to enter the apartment to gather some belongings for J.C. and that J.C. was at her residence. Officer Stephens testified that J.C.'s mother "stated quickly to [him] before she went

around to the apartment that her daughter did not have any clothes or shoes left on the side of the curb naked in just a blanket" and "[s]he was more in a hurry to get her daughter some clothes." *Id.* at 16.

[6] Officer Stephens further testified that he went to the residence of J.C.'s mother to make contact with J.C., and that J.C. was very uncooperative. He stated that he asked J.C. what had happened at her residence, and "[a]t first [she] stated that nothing happened. She didn't want her husband to go to jail." *Id.* at 21. He testified that J.C. "stated that she knew nothing about a break in, residential entry, or anything of that. She stated that her and [Christlieb] were at the residence. [J.C.] stated that nothing happened, and then [she] stated that he did kick me twice but it didn't hurt." *Id.* at 22. Officer Stephens stated that J.C. said Christlieb had battered her "[i]n the back area" and that she would not let him see her back area. *Id.* at 23. On cross-examination, he stated he did not notice any injuries to J.C.

[7] Officer Reynolds testified that he observed the apartment was in complete disarray, that Christlieb "was appearing to be very stand offish towards officers," that Christlieb smelled like he had been drinking alcohol that night, that he administered a P.B.T., and that the result was .085. *Id.* at 25. Officer Reynolds testified "we were already suspicious of [J.C.'s] circumstances," "[w]hy the door was unscrewed off of its hinges during a supposed Residential Entry type thing," "[t]ypically the door is kicked in or forced in not unscrewed and laying down," "[t]hat doesn't make much sense through that course of the investigation," "[e]ventually Mr. Christlieb was placed in handcuffs as soon as

he was placed in handcuffs he started to become a little bit belligerent," "[s]tating stuff if you take the handcuffs off of me step in the back yard I'll whoop you're a--," and "[s]tuff like that towards the officers on the scene." *Id.* at 26-27.

[8] The trial court revoked Christlieb's suspended sentence and ordered that his sentence be served in the Department of Correction.

## *Discussion*

[9] Chrislieb claims the trial court erred in admitting hearsay at his revocation hearing, that the hearsay evidence violated his due process right to confront witnesses against him, and that the evidence is insufficient to support the revocation of his probation and community corrections placement. He challenges the admission of Officer Stephens's testimony as to what J.C. told him, namely, that she knew nothing about a break in and that Christlieb had kicked her twice in the back.

[10] The State maintains that the record supports a finding of substantial trustworthiness and that the circumstances supported an inference that J.C.'s statements were reliable. The State also argues that the evidence most favorable to the judgment was that Christlieb kicked J.C. in the back at least twice and then made up a story about a home invasion in order to deflect attention from his actions.

A.  *Testimony of Officer Stephens*

The Ind. Rules of Evidence do not generally apply in probation revocation proceedings. Ind. Evidence Rule 101(d)(2).[1] However, due process principles applicable in probation revocation proceedings include the right of the probationer to confront and cross-examine adverse witnesses, Ind. Code § 35-38-2-3(f), although the right to confrontation and cross-examination in probation revocation hearings is narrower than in a criminal trial. *Figures v. State*, 920 N.E.2d 267, 271 (Ind. Ct. App. 2010). The general rule against hearsay is inapplicable in a probation revocation proceeding and hearsay may be admitted without violating the probationer's right to confrontation if the trial court finds the hearsay is "substantially trustworthy." *Reyes v. State*, 868 N.E.2d 438, 441-442 (Ind. 2007). Where the State shows the hearsay evidence bears "substantial guarantees of trustworthiness," it need not also show good cause for not producing live testimony. *Id.* at 441. Ideally, the trial court should explain on the record why the hearsay is reliable and why it is substantial enough to comprise good cause for dispensing with live witnesses. *Id.* at 442. However, failure to provide an explanation on the record is not fatal where the record supports such a determination. *See id.*

The record reveals that the testimony offered by Officer Stephens met the substantial trustworthiness test. His testimony was similar to that of the other officers regarding their interactions with Christlieb, Christlieb's claims about a

---

[1] Ind. Evidence Rule 101(d)(2) provides in part that "[t]he rules, other than those with respect to privileges, do not apply in . . . [p]roceedings relating to . . . sentencing, probation, or parole . . . ."

residential entry, the fact Christlieb smelled like alcohol, the condition of the apartment, and their observations regarding the door which was off its hinges. The testimony of Officer Stephens regarding J.C.'s statements that Chrislieb kicked her in the back two times is consistent with Officer Brunett's testimony that Christlieb told him at the jail that the real truth was that he "beat the s--- out of that b----" and "beat her brains out." Transcript at 10. In addition, we observe Officer Stephens testified that J.C.'s mother stated that J.C. did not have "any clothes or shoes left on the side of the curb naked in just a blanket" and that J.C.'s mother was in a hurry to get her daughter some clothes. *Id.* at 16. Further, Officer Stephens's testimony that J.C. told him that she did not know anything about a break in or residential entry is consistent with the testimony of the officers that the door had been unscrewed and not kicked or forced in.

[13] Based upon the record, we cannot say that the challenged testimony did not satisfy the trustworthiness test outlined in *Reyes.* Accordingly, the trial court did not abuse its discretion in admitting Officer Stephens's testimony.

B. *Evidence of Violation*

[14] A defendant is not entitled to serve a sentence in either probation or a community corrections program. *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). Rather, placement in either is a matter of grace and a conditional liberty that is a favor, not a right. *Id.* (citing *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999), *reh'g denied*). For the purposes of appellate review, we treat a

hearing on a petition to revoke a placement in a community corrections program such as home detention the same as we do a probation revocation hearing. *Id.* (citing *Cox*, 706 N.E.2d at 549). The State needs to prove the alleged violations by a preponderance of the evidence. *Id.* We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of home detention or probation, we will affirm its decision to revoke home detention or probation. *See id.* The violation of a single condition is sufficient to revoke home detention or probation. *See Wilson v. State*, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999).

[15] The requirement that a probationer obey federal, state, and local laws is automatically a condition of probation by operation of law. *Williams v. State*, 695 N.E.2d 1017, 1019 (Ind. Ct. App. 1998); Ind. Code § 35-38-2-1(b). The State does not need to show that the probationer was convicted of a new crime. *Whatley v. State*, 847 N.E.2d 1007, 1010 (Ind. Ct. App. 2006). The allegation that a probationer has violated probation has to be proven by only a preponderance of the evidence. *Id.*

[16] The State presented evidence that officers responded to a complaint of a domestic dispute, that Christlieb told the officers a home invasion had occurred, that the officers noticed that Christlieb appeared intoxicated and smelled of alcohol, that the apartment was in disarray as if a struggle had occurred, and that the door had been unscrewed and not kicked or forced in. The state also

presented evidence that J.C.'s mother arrived to pick up clothes for J.C. and stated J.C. "did not have any clothes or shoes left on the side of the curb naked in just a blanket," that J.C. stated she did not know anything about a break in and that Christlieb had kicked her twice in the back area, and that Christlieb told Officer Brunett at the jail that the real truth was that he "beat the s--- out of that b----" and "beat her brains out." Transcript at 10, 16.

## *Conclusion*

Based on the facts most favorable to the revocation, we conclude that the State presented sufficient evidence from which the court could find by a preponderance of the evidence that Christlieb violated the terms of his home detention and probation. *See Kuhfahl v. State*, 710 N.E.2d 200, 201 (Ind. Ct. App. 1999) (holding that the evidence was sufficient to revoke defendant's probation and the defendant's argument was simply to ask this court to reweigh the evidence and the credibility of the witnesses).

For the foregoing reasons, we affirm the revocation of Christlieb's placement and probation.

Affirmed.

Vaidik, C.J., and Bradford, J., concur.