## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 28 2017, 9:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel Boyd,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 28, 2017<br><br>Court of Appeals Case No.<br>49A05-1701-CR-192<br><br>Appeal from the Marion Superior Court<br>The Honorable Shatrese Flowers, Judge<br><br>The Honorable James Snyder, Commissioner<br><br>Trial Court Cause No.<br>49G20-1408-FB-38247 |

**Barnes, Judge.**

## Case Summary

Daniel Boyd appeals the trial court's decision to revoke his placement at Marion County Community Corrections ("MCCC"). We affirm.

## Issues

Boyd raises two issues on appeal, which we restate as:

    I.    whether the trial court abused its discretion in admitting evidence regarding a urine sample taken from Boyd; and

    II.    whether there was sufficient evidence to show that Boyd violated the terms of his placement at MCCC.

## Facts

On August 5, 2014, Boyd was charged with two counts of Class B felony dealing in cocaine and two counts of Class D felony possession of cocaine. On December 30, 2014, Boyd pled guilty to Class B felony dealing in cocaine and Class D felony possession of cocaine; the other charges were dismissed. The trial court sentenced Boyd to six years with three years executed in the Department of Correction ("DOC") and three years executed in MCCC. Once Boyd was released from the DOC, he was placed in Duvall Residential Center ("DRC").

On September 8, 2016, MCCC filed a notice of community corrections violation, which alleged that Boyd: (1) violated DRC rules regarding conspiracy/attempting/aiding or abetting; (2) violated DRC rules regarding trafficking; (3) violated DRC rules regarding the possession or use of a

controlled substance; and (4) failed to comply with the DRC payment policy. All of these alleged violations occurred on September 7, 2016.

[5] A hearing was held on December 29, 2016. During the hearing, an employee of DRC, Officer Andrew Carlson, testified that on September 7, 2016, he was responsible for conducting searches of residents coming back to the facility after leave on day passes. Officer Carlson testified that he encountered Boyd and, pursuant to DRC rules, conducted a search of Boyd and his belongings. While conducting the search, Officer Carlson noticed Boyd was mumbling when he spoke, which was something Boyd had not done during previous encounters. Officer Carlson then asked Boyd to open his mouth and remove whatever was in his mouth. Boyd complied, and Officer Carlson testified that Boyd "spit … two baggies of K2 onto the floor." Tr. Vol. II p. 8. Boyd objected to this statement on hearsay grounds. The trial court overruled the objection.

[6] Officer Carlson then testified that he received training on how to identify synthetic marijuana, or K2, but he could not recall any specifics about the training. He also testified that he had encountered what he believed was K2 multiple times. On cross-examination, Officer Carlson testified that he was not sure if the substance was K2, marijuana, or something else. He later clarified that it is hard to visually discern the differences between K2 and marijuana. Officer Carlson also testified that residents of DRC are required to sign a contract, which includes the proper procedure for bringing items into the facility and an agreement to abstain from using or possessing drugs.

[7] DRC Sergeant Danny Williams testified that residents are not allowed to bring tobacco or other substances into the facility, unless they are prescribed by a physician. He stated that, if residents have a prescription, they must follow specific procedures that include first checking them into the front desk upon arrival. Sergeant Williams testified that on the day of the incident, he was called into Boyd's holding cell by Officer Carlson, and he was shown the two bags recovered from Boyd's mouth. Sergeant Williams then decided to conduct a "drop" on Boyd. *Id.* at 19. He explained that a "drop" is a urine drug screen in which he collects a urine sample and then dips a K2 tester and five point tester in the resident's urine in order to get a positive or negative result for illegal substances. Sergeant Williams testified that it is standard procedure for the officer to open the packages in front of the resident, watch the resident use the bathroom, and dip the testers in the cup. Sergeant Williams testified that he had conducted the test on several occasions and followed standard procedure when he conducted the test on Boyd. Sergeant Williams then testified that Boyd tested positive for K2, based on the results of the dip stick test. Boyd again objected on hearsay grounds. The objection was overruled. Sergeant Williams also testified that he showed Boyd the positive result, and he stated that a positive result violated DRC rules.

[8] Boyd testified that, when he returned to DRC, he did not have anything in his mouth. He testified that, when he entered the search room, Officer Carlson conducted a search and, when the search was complete, Officer Carlson left the room. Boyd then claimed that, as he began putting his clothes back on, Officer

Carlson returned and spotted the bags on the floor. Boyd testified that he never saw the bags on the floor and did not have the bags in his mouth or in his possession at any point. He also testified that he had not used K2, was unfamiliar with K2, and had never tested positive for any other substances prior to this incident.

[9] At the conclusion of the hearing, the trial court determined that the State had not presented sufficient evidence to sustain the allegations concerning conspiracy or failure to pay DRC funds but had presented sufficient evidence that Boyd violated DRC rules against trafficking and possession or use of a controlled substance. As such, the trial court revoked Boyd's community corrections placement and ordered him to serve the remainder of his sentence in the DOC. Boyd now appeals.

## Analysis

### I. Admission of Evidence

[10] Boyd argues that the trial court abused its discretion by allowing hearsay evidence and revoking his placement in community corrections. Probationers during a revocation hearing are not entitled to the full array of constitutional rights afforded a defendant at trial. *Reyes v. State,* 868 N.E.2d 438, 440 (Ind. 2007). They are entitled to certain due process rights, which include "written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine witnesses, and a neutral and detached hearing body." *Cox v. State,* 706 N.E.2d 547, 549 (Ind. 1999). The procedures at such hearings are to be flexible

and as such the strict rules of evidence do not apply in revocation hearings. *Id.; see also Holmes v. State,* 923 N.E.2d 479, 482 (Ind. Ct. App. 2010) (holding the Indiana Rules of Evidence in general and the rules against hearsay in particular do not apply in community corrections placement revocation hearings). Instead, courts may consider any relevant evidence bearing some substantial indicia of reliability, including hearsay evidence. *Cox,* 706 N.E.2d at 551. During a revocation hearing, a trial court may admit hearsay evidence without violating a probationer's right to confrontation if the trial court finds the hearsay evidence to be "substantially trustworthy." *Reyes,* 868 N.E.2d at 442. "[T]he absence of strict evidentiary rules places particular importance on the fact-finding role of judges in assessing the weight, sufficiency, and reliability or proffered evidence." *Cox,* 706 N.E.2d at 551. "This assessment, then, carries with it a special level of judicial responsibility and is subject to appellate review." *Id.*

[11]   Boyd argues that the trial court abused its discretion by allowing Sergeant Williams to testify about the results of Boyd's urine sample. Boyd contends that this testimony was unreliable hearsay and, as such violated his due process right to cross-examine witnesses. As discussed, the hearsay exclusion rule is not applicable to these proceedings. *Id.* at 552. The trial court may consider all relevant evidence, including reliable hearsay. Consequently, we need not address whether the officer's testimony was hearsay. Rather, we will consider only whether the evidence was substantially trustworthy and has a substantial indicia of reliability.

Boyd contends that Sergeant Williams's testimony was not substantially trustworthy because Sergeant Williams had "absolutely no scientific expertise about a scientific test he conducted." Appellant's Br. p. 10. Sergeant Williams testified that he had conducted the dip stick test on several occasions and explained in detail how the urinalysis test is performed. He also testified that he followed standard procedure when he conducted the test on Boyd, including watching Boyd urinate, opening the test strips in front of him, and allowing him to review the results. In addition, Boyd was given the opportunity to cross-examine Sergeant Williams during the hearing. Given the evidentiary standards applicable to revocation proceedings, we find that the trial court did not abuse its discretion by admitting the testimony of Sergeant Williams. We also note the trial court had the opportunity to assess and assign the weight to be given to this evidence.

## II.    *Sufficiency of Evidence*

Boyd contends that the evidence was insufficient to show that he violated the terms of his community corrections placement. We review a decision to revoke placement in a community corrections program in the same manner as a decision to revoke probation. *Cox,* 706 N.E.2d at 549. "A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence." *Id.* at 551. We will not reweigh the evidence or judge the credibility of witnesses and will consider all the evidence most favorable to the judgment of the trial court. *Id.* "If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has

violated any terms of probation, we will affirm its decision to revoke probation." *Id.* The violation of a single condition of probation is enough to support revocation. *Pierce v. State,* 44 N.E.3d 752, 755 (Ind. Ct. App. 2015).

[14] Boyd contends that "the testimony of [Officer Carlson] is not sufficient to show by a preponderance of the evidence that [he] possessed K2." Appellant's Br. p. 17. Specifically he argues that Officer Carlson's testimony that "the matter in question was similar to or consistent with the substances the witness was shown during his training is not really probative of the conclusion that it was actually one of these substances." *Id.* Our supreme court, however, has established that, "The State is not required to introduce the subject contraband to obtain a conviction for dealing or possession." *Helton v. State,* 907 N.E.2d 1020, 1024 (Ind. 2009) (holding the identity and quantity of a controlled substance and the defendant's possession of or dealing in narcotics may all be established through witness testimony and circumstantial evidence). In order to sustain a conviction for possession, the opinion of someone sufficiently experienced with the drug as well as other circumstantial evidence is sufficient. *Clifton v. State,* 499 N.E.2d 256, 258 (Ind. 1986). The burden of proof in a revocation proceeding is even less than for obtaining a criminal conviction.

[15] Officer Carlson testified that he observed Boyd spit out two bags containing substances similar in appearance to K2 or marijuana. Officer Carlson also testified that he had been trained on how to identify K2 and marijuana. Although he stated that the differences between the two are hard to visually discern, Sergeant Williams established that both substances are visually

distinctive from other substances, such as tobacco. Officer Carlson also testified that he had encountered K2 and marijuana on several occasions during his employment. In addition, the State presented testimony that Boyd tested positive for K2 and that Boyd would have violated placement rules by either possessing or testing positive for any controlled substance.[1] Because only a single violation of a condition of community corrections is sufficient to support revocation, we find that the evidence was sufficient to revoke Boyd's placement in MCCC.

## Conclusion

[16] The trial court did not abuse its discretion by admitting the testimony of Sergeant Williams, and there was sufficient evidence to support the trial court's decision to revoke Boyd's placement in community corrections. We affirm.

[17] Affirmed.

Baker, J., and Crone, J., concur.

---

[1] This also includes possession or use of tobacco.