## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

09/06/2017, 11:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone, IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Bryant McDonald, *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff.* | September 6, 2017 Court of Appeals Case No. 48A02-1703-CR-662 Appeal from the Madison Circuit Court The Honorable Mark Dudley, Judge Trial Court Cause No. 48C06-1210-FC-1936 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Michael McDonald (McDonald), appeals the trial court's revocation of his work release placement and the imposition of his previously suspended sentence following the violation of his probation.

We affirm.

# ISSUE

McDonald raises one issue on appeal, which we restate as: Whether the trial court abused its discretion by admitting certain evidence at McDonald's revocation hearing.

# FACTS AND PROCEDURAL HISTORY

On October 17, 2012, under Cause Number 48C06-1210-F6-001936 (F6-1936), the State charged McDonald with burglary, a Class C felony; theft, a Class D felony; and unlawful possession or use of a legend drug, a Class D felony. The State also charged McDonald as a habitual offender. On November 26, 2012, pursuant to a plea agreement, McDonald agreed to plead guilty as charged. With regard to sentencing, the plea agreement provided for a sentencing cap of two years on the executed portion of McDonald's sentence. On December 31, 2012, the trial court conducted a sentencing hearing. The trial court subsequently sentenced McDonald to concurrent terms of seven years for the burglary offense, and three years each for the theft and unlawful possession or use of a legend drug convictions. Based on McDonald's plea agreement, the trial court ordered McDonald to serve two years of his executed sentence in the

Department of Correction (DOC), and it suspended the remaining five years to probation.

[5] On April 10, 2016, under Cause Number 48C06-1604-F6-000756 (F6-756), the State charged McDonald with residential entry, a Level 6 felony; interference with reporting a crime, a Class A misdemeanor; and invasion of privacy, a Class A misdemeanor. The victim of McDonald's invasion of privacy offense was McDonald's ex-girlfriend, Jaime Shaw (Shaw). As a condition of his release from custody pending his trial, the trial court issued a no-contact order against McDonald. On April 13, 2016, the State filed a petition to revoke McDonald's probation based on the charges under Cause Number F6-756. On July 11, 2016, McDonald admitted to the probation violation.

[6] On June 19, 2016, under Cause Number 48C06-1607-F6-001347 (F6-1347), the State charged McDonald with two Counts of invasion of privacy, a Class A misdemeanor and a Level 6 felony. McDonald's alleged crimes were related to Shaw. Again, the trial court issued a no-contact order against McDonald. On July 25, 2016, the State filed an amended notice of probation violation alleging that McDonald had been charged with two Counts of invasion of privacy, under Cause Number F6-1347. On August 8, 2016, McDonald admitted to the probation violation. Accordingly, the trial court revoked three years of McDonald's previously-suspended sentence under Cause Number F6-1936, and ordered it to be executed at the Madison County Work Release Center.

On September 12, 2016, the State filed a petition to terminate McDonald's work release. Specifically, the State alleged that McDonald had violated the terms of his work release by failing two drugs screens, and for admittedly using methamphetamine. On September 26, 2016, the State filed a notice of violation of suspended/executed sentence making similar allegations. On September 27, 2016, the trial court conducted an evidentiary hearing on the State's petition to terminate McDonald's work release and notice of violation of suspended/executed sentence. On October 11, 2016, the trial court issued an order finding that McDonald had violated the condition of his suspended sentence and conditions of his work release. Nevertheless, the trial court ordered McDonald's return to work release, along with a substance abuse evaluation.

On November 16, 2016, the State filed another petition to terminate McDonald's work release alleging, in part, that McDonald had absconded from the work release facility for a period of over sixteen hours, failed to obtain a substance abuse evaluation, and violated a no-contact order against Shaw. Subsequently, on November 22, 2016, the State filed a notice of violation of suspended/executed sentence making the same allegations. On January 23, 2017, McDonald admitted the allegations in the State's notice of violation of suspended/executed sentence and petition to terminate work release. Notwithstanding the violations, the trial court returned McDonald to work release.

[9]     On February 13, 2017, the State filed yet another petition to terminate work release alleging, in part, that McDonald violated the terms of his work release by being in possession of "non-tobacco related contraband." (Appellant's App. Vol. II, p. 144). In addition, the State alleged that "On 02/12/2017, Mr. McDonald was arrested for new criminal offenses of [s]talking and two [C]ounts of [i]nvasion of privacy."[1] (Appellant's App. Vol. II, p. 144). Based on McDonald's violations, on February 22, 2017, the State filed a notice of violation of suspended/executed sentence.

[10]    On March 7, 2017, the trial court conducted an evidentiary hearing on the State's petition to terminate work release and notice of violation of suspended/executed sentence. At the revocation hearing, the State sought to introduce evidence that McDonald violated at least one of the no-contact orders in place for Shaw under Cause Numbers F6-1347 and F6-756, between February 11-12, 2017. Madison County Deputy Sherriff Derek Saylor (Deputy Saylor) testified for the State that on February 11, 2017, he was dispatched to investigate suspicious activity outside Shaw's residence on 588 West County Road 700 North, in Madison County, Indiana. Deputy Saylor indicated that the dispatch information stated that there was no-contact order against McDonald for the benefit of Shaw. Deputy Saylor testified that when he questioned McDonald why he was in the area, and McDonald stated that he was visiting a friend who lived nearby, but he was on his way home. Deputy

_____

[1] The charging information for these crimes was not included in the Appellant's Appendix.

Saylor testified that he thereafter went to Shaw's residence and made contact with Shaw, and Shaw's ex-husband who was also present. Before Deputy Saylor could testify to Shaw's ex-husband's statements, McDonald objected to Deputy Saylor's testimony as hearsay. The trial court overruled the objection and stated, "It's all very clear this fits well within the reliable hearsay rule that I'm allowed to take reliable hearsay at a probation revocation hearing." (Tr. p. 9). Deputy Saylor then went on to state that Shaw's ex-husband reported to him that Shaw was the one who alerted him about McDonald's driving by her house. At that point, McDonald objected on double hearsay grounds. The State then rephrased its question and asked Deputy Saylor if he had spoken with Shaw in the course of his investigation. Without further objection from McDonald, Deputy Saylor stated that Shaw informed him that on February 11, 2017, at around 5:00 p.m., McDonald knocked on her back door, but Shaw "was scared to answer her door." (Tr. p. 10). Deputy Saylor went on to state that Shaw informed him that she had seen McDonald's truck parked to the west of her residence with its lights off, and "every once in a while" McDonald drove by her "residence very slowly with the lights off . . . and then park[ed] to the east." (Tr. p. 10). Deputy Saylor stated that he encountered McDonald, "a quarter mile to half a mile to the east of" Shaw's residence. (Tr. p. 11). Deputy Saylor stated that Shaw informed him that McDonald drove by her house for a few hours during the evening on February 11 until the early morning on February 12, 2017. At the close of the hearing, the trial court found that McDonald had violated the condition of his suspended/executed sentence and work release. Consequently, the trial court revoked McDonald's work release

placement and ordered him to serve the remainder of his previously-suspended sentence under Cause Number F6-1936 in the DOC.

[11] McDonald now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[12] McDonald contends the trial court erred in considering hearsay evidence in revoking his placement in work release. Specifically, McDonald now asserts that the trial court erred in admitting Deputy Saylor's testimony which contained hearsay statements of his ex-girlfriend, Shaw.[2]

[13] We begin with the premise that there is no right to probation, and a trial court has "discretion whether to grant it, under what conditions, and whether to revoke it if conditions are violated." *Reyes v. State*, 868 N.E.2d 438, 440 (Ind. 2007), *reh'g denied*. "The due process right applicable in probation revocation hearings allows for procedures that are more flexible than in a criminal prosecution." *Id*. Accordingly, "courts may admit evidence during probation revocation hearings that would not be permitted in a full-blown criminal trial." *Id*.; *see also* Ind. Evidence Rule 101(c)(2) (explaining that the Indiana Rules of Evidence are not applicable in probation proceedings). Nevertheless, "[t]his does not mean that hearsay evidence may be admitted willy-nilly in a probation

---

[2] McDonald's entire argument on appeal is that the trial court erred in admitting Shaw's hearsay statements to Deputy Saylor because the statements are unreliable solely based on the fact that Shaw is an ex-girlfriend. In his appellate brief, McDonald cites to *United States v. Lloyd*, 566 F.3d 341, 344 (3d Cir. 2009), and *United States v. Comito*, 177 F.3d 1166, 1167 (9th Cir. 1999). These authorities are not binding on our court and do not support his argument.

revocation hearing." *Reyes*, 868 N.E.2d at 440. In *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999), *reh'g denied*, the Indiana Supreme Court held that "judges may consider any relevant evidence bearing some substantial indicia of reliability[,]" including reliable hearsay. More recently, in *Reyes*, our Supreme Court adopted the substantial trustworthiness test as the approach to be used to determine the reliability of hearsay evidence in probation revocation proceedings. *Reyes*, 868 N.E.2d at 441. In the substantial trustworthiness test, "the trial court determines whether the evidence reaches a certain level of reliability, or if it has a substantial guarantee of trustworthiness." *Id*. "[T]he substantial trustworthiness test implicitly incorporates good cause into its calculus." *Id*. When a trial court applies this substantial trustworthiness test, "ideally [the trial court should explain] on the record why the hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing . . . live witnesses." *Id*. at 442 (quoting *United States v. Kelley*, 446 F.3d 688, 693 (7th Cir. 2006)).

[14] Consistent with the foregoing principles, our task here is not to consider the hearsay statement pursuant to traditional rules of evidence, but instead to determine whether it was reliable enough to have been admitted. *Cox*, 706 N.E.2d at 551. The record in this case indicates that Shaw's statements to Deputy Saylor had substantial indicia of trustworthiness. The record shows that Deputy Saylor was dispatched to Shaw's residence to investigate suspicious activity. The dispatch information indicated that there was a no-contact order against McDonald for the benefit of Shaw. Deputy Saylor testified that he

spoke with Shaw who informed him that McDonald drove by her "residence very slowly with the lights off . . . and then park[ed] to the east." (Tr. p. 10). Deputy Saylor testified that he encountered McDonald, "a quarter mile to half a mile to the east of" Shaw's residence. (Tr. p. 11). Deputy Saylor also stated that Shaw's ex-husband corroborated Shaw's narration of events by indicating that he saw McDonald's vehicle drive back and forth in font of Shaw's residence. Based on the foregoing, the trial court did not abuse its discretion by admitting Shaw's statements to Deputy Saylor.

## CONCLUSION

In light of the above, the trial court did not abuse its discretion by admitting Shaw's statements to Deputy Saylor.

Affirmed.

Robb, J. and Pyle, J. concur